### In re ADOPTION OF COPPERSMITH.

[Cite as *In re Adoption of Coppersmith* (2001), 145 Ohio App.3d 141.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18716.

Decided Aug. 24, 2001.

---

**33.** *Niese & Sons Farms,* 143 Ohio App.3d at 803, 758 N.E.2d at 1244.

*James E. Swaim* and *Richard Hempfling,* for appellees Jamison and Lisa Coppersmith.

*Eric A. Stamps,* for appellant Shane Hall.

FAIN, Judge.

The appellant, Shane Hall, claims that Ohio's statutory scheme regarding putative fathers, R.C. 3107.06 *et seq.*, is unconstitutional because it violates his right to due process and equal protection of the law under the United States and Ohio Constitutions by denying him notice of, and the right to prevent, the adoption of his child, Taylor.

Shane failed initially to plead or to amend his motion to vacate Taylor's adoption to include these constitutional claims and to serve the Attorney General under R.C. 2721.12, a prerequisite to the assertion of the unconstitutionality of a statute. In order that Shane may properly invoke the jurisdiction of the trial court to consider his contention that R.C. 3107.06 *et seq.* is unconstitutional, and pursuant to *Leisure v. State Farm Mut. Auto. Ins. Co.*,[1] the judgment of the trial court is reversed, and this cause is remanded. Upon remand, Shane, who may understandably not have anticipated the interposition of R.C. 3107.06 against his motion for relief from the decree of adoption, may seek to amend his motion to assert the unconstitutionality of the statute, properly serving the Ohio Attorney General therewith.

I

Taylor was born out of wedlock on September 9, 1997, to Lisa Webb (n.k.a. Coppersmith) and Shane. Lisa later married appellee Jamison Coppersmith. In 2000, when Taylor was three years old, Jamison filed a petition to adopt her.

 Ohio law requires a putative father to register as a child's father within thirty days of the child's birth.[2] Under the current statutory scheme, if a putative father of a child born on or after January 1, 1997, fails to register within this thirty-day period, then his child may be adopted by another person without his consent.[3] In fact, he is not even entitled to notice of the pending adoption proceeding.[4]

---

1. (2000), 89 Ohio St.3d 523, 524, 733 N.E.2d 1117, 1118.

2. R.C. 3107.062.

3. R.C. Chapters 3107.06, 3107.061, and 3107.07(B)(1). But, see, *In re Adoption of Baby Boy Brooks* (2000), 136 Ohio App.3d 824, 829–831, 737 N.E.2d 1062, 1066–1067 (putative father's failure to register within thirty days of his child's birth does not negate his need for consent per R.C. 3107.07, when he judicially establishes parentage prior to the filing of an adoption petition).

4. R.C. 3107.11(A)(3).

At the hospital where Taylor was born, Shane had been given reason to believe that he was going to be recorded as the father on the birth certificate. In the fall of 1999, long after the thirty-day period to sign the putative father registry had expired, Shane discovered that he was not recorded on the birth certificate as the father. At that time, Shane was not aware of the putative father registry statute. Because Shane was not recorded on the birth certificate as the child's father, he was a putative father. Because he was a putative father who had not signed the putative father registry, his consent to Taylor's adoption was not required, and he was not entitled to notice of the pending proceeding under current Ohio law. Though not necessary, an attempt to inform Shane of Taylor's pending adoption was made by publishing notice of the proceeding in the Daily Court Reporter prior to the court's order of adoption on March 10, 2000. But that notice never reached Shane.

Three months after the decree, having become aware of the adoption, Shane moved to vacate the adoption, upon the ground that he was not given adequate notice of the proceeding. He claimed that Lisa and Jamison did not make a reasonable effort to locate him and provide notice of Taylor's adoption, notwithstanding Jamison's affidavit that he did not know Shane's whereabouts or how to locate Shane. Shane claimed that this affidavit amounted to a fraud on the court. He stated that Lisa could have located him with reasonable effort, since she knew where his parents lived and Shane's stepbrother was married to her sister, and each party would have put Lisa in contact with him. Further, he had a listed telephone number and address.

After a hearing, the court orally ruled that Shane was entitled to, but did not receive, notice of the proceeding. The court nevertheless held Shane's motion in abeyance, based on its belief that Ohio's putative father registry statutes might have obviated Jamison's duty to provide Shane with notice of Taylor's adoption. In a post-hearing brief, Shane argued that Ohio's statutory scheme regarding putative fathers is unconstitutional. After analysis of both parties' briefs, the trial court denied Shane's motion. From that decision, Shane appeals.

## II

Each of Shane's assignments of error essentially challenges the constitutionality of Ohio's statutes regarding putative fathers. Thus, we will address his claims collectively. These assignments of error are as follows:

"The trial court erred in failing to vacate the adoption on the basis that the 'putative father registry' statutes deprive appellant of his procedural due process rights in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution.

"The trial court erred in failing to vacate the adoption on the basis that the 'putative father registry' statutes deprive appellant of his substantive due process rights in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution.

"The trial court erred in failing to vacate the adoption on the basis that the 'putative father registry' statutes deprive appellant of the equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

"As applied to appellant, the 'putative father registry' statutes violate his right to due process and equal protection of the laws under the United States and Ohio Constitutions.

"The trial court erred in applying the 'putative father registry' statutes to appellant where appellant had seized his opportunity to bond with his child and/or the mother and adoptive father deliberately tried to prevent him from receiving notice."

Simply put, Shane argues that the trial court erred by relying on Ohio's statutory scheme to deprive him of the right to notice of, and the opportunity to refuse consent to, Taylor's adoption, because the statutes are unconstitutional. The court implicitly decided that R.C. 3107.06 *et seq.* is constitutional and then applied these statutes to deny Shane's motion.

Before addressing the merits of Shane's contentions, we must determine whether the necessary predicates were satisfied for the trial court's determination of the constitutionality of the statute. R.C. 2721.12 states:

"In any action or proceeding that involves the validity of a municipal ordinance or franchise, the municipal corporation shall be made a party and shall be heard, and, *if any statute or the ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the complaint in the action or proceeding and shall be heard.*" (Emphasis added.)

In *Cicco v. Stockmaster*,[5] the Ohio Supreme Court held that in order to vest a trial court with jurisdiction to decide the constitutionality of a statute under former R.C. 2721.12, a party must (1) raise the issue in a complaint or initial pleading or amendment thereto and (2) serve the Attorney General in accordance with the methods set forth in Civ.R. 4.1.[6] This requirement applies to every party who challenges a statute's constitutionality, even if the challenge is

---

5. (2000), 89 Ohio St.3d 95, 728 N.E.2d 1066.

6. *George Shima Buick, Inc. v. Ferencak* (2001), 91 Ohio St.3d 1211, 1212, 741 N.E.2d 138, 139, citing *Cicco v. Stockmaster* (2000), 89 Ohio St.3d 95, 728 N.E.2d 1066.

not framed as an action for a declaratory judgment under R.C. 2721.12, because every constitutional challenge to a statute is deemed a request for a court declaration. *George Shima Buick, Inc. v. Ferencak.*[7]

The legislature's recent amendment of R.C. 2721.12, which applies in this matter, closely parallels the court's decision in *Cicco.*[8] The statute now requires parties to serve a copy of their complaint with the Attorney General when contesting the constitutionality of a statute. Our reading of amended R.C. 2721.12 and *Cicco* suggests that parties who challenge a statute's constitutionality under amended R.C. 2721.12 must now (1) raise the claim of the statute's unconstitutionality in their complaint or amendment thereto and (2) serve the Attorney General under the applicable Rules of Civil Procedure. If a party fails to comply with either requirement, then the jurisdictional predicate for the court's adjudication of the statute's constitutionality has not been laid.[9]

Shane admits that he did not serve his motion to vacate Taylor's adoption on the Attorney General but argues that he was not required to because the plain language of amended R.C. 2721.12 indicates that this service requirement applies only if an individual files a *complaint* alleging that a state statute is unconstitutional. Since a motion to vacate an adoption is not a complaint, he argues that R.C. 2721.12 does not apply.

We disagree. To determine whether R.C. 2721.12 applies to his motion to vacate Taylor's adoption, we analyze R.C. 2721.12 to ascertain the General Assembly's intent, since the primary objective in statutory interpretation is to give effect to the legislature's intent.[10] Intent is understood by studying the plain language of the statute. Words should be given their ordinary meaning. If the language of the statute in question is clear and definite, we must apply the statute as it is written.

A plain reading of R.C. 2721.12 reveals that the intent of the legislature was to provide early notice to the Attorney General when a party challenges the constitutionality of a state statute by requiring that party to serve the Attorney General with a copy of the complaint. This language is clear and ascertainable and not subject to differing interpretations. A complaint is the "original or initial

---

7. (2001), 91 Ohio St.3d 1211, 1212, 741 N.E.2d 138, 139.

8. *Harmon v. Adams* (Feb. 16, 2001), Union App. No. 14–2000–33, unreported, 2001 WL 163423 (interpreting amended R.C. 2721.12).

9. *Cicco,* 89 Ohio St.3d at 100, 728 N.E.2d at 1071 (interpreting former R.C. 2721.12).

10. *Bailey v. Republic Eng. Steels, Inc.* (2001), 91 Ohio St.3d 38, 39, 741 N.E.2d 121, 123 (internal citations omitted).

pleading by which an action is commenced under codes or Rules of Civil Procedure" and the "pleading which sets forth a claim for relief."[11] While Shane called his first pleading a motion to vacate the stepparent's adoption, this motion was the functional equivalent of a complaint, because it was the initial pleading setting forth Shane's claim for relief. Thus, Shane was required to serve a copy of his motion to vacate Taylor's adoption upon the Attorney General to vest the trial court with jurisdiction to consider his constitutional challenge to Ohio's statutory scheme regarding putative fathers. Consequently, any argument with respect to the constitutionality of Ohio's putative father statutory scheme was not properly before the trial court, and the court's decision adjudicating the constitutionality of the statute must be vacated.

Shane next contends that even if he was required to, but failed to comply with R.C. 2721.12, we have authority under *Leisure v. State Farm Mut. Auto. Ins. Co.*[12] to remand this cause in order that he may comply with the requirements of R.C. 2721.12. We agree. A remand for this purpose appears to be contemplated by the opinion in *Leisure,* and it seems to be particularly just and appropriate under the circumstances of this case, in which a biological parent, discovering that his child has been adopted out from under him without his knowledge, after notice by publication, files a motion to vacate the decree upon the ground that the notice is insufficient, only to have the adopting party argue the application of a statute, the constitutionality of which he questions, purporting to obviate the requirement of notice. Pursuant to *Leisure,* we remand this cause with instructions to give Shane the opportunity to rectify his failure by seeking to amend his motion to vacate, timely and properly serving the Attorney General, as required by R.C. 2721.12.

### III

We also take this opportunity to invite the Supreme Court to reconsider its holding in *Cicco,* to the extent that it precludes a litigant from asserting the unconstitutionality of a statute in a pleading other than the complaint or initial pleading or an amendment thereto. We agree with the dissent in *Cicco* that litigants should not be foreclosed from asserting constitutional challenges solely because these issues arise at a later point in the action, especially where no prejudice is visited upon any party or the state, based upon our conviction that

---

11. Black's Law Dictionary (5 Ed.1983) 149.

12. (2000), 89 Ohio St.3d 110, 728 N.E.2d 1078. See, also, same case at 89 Ohio St.3d 523, 733 N.E.2d 1117.

wherever possible cases should be resolved upon their merits, rather than upon technical niceties.[13]

## IV

The judgment of the trial court is reversed. Pursuant to *Leisure*, this cause is remanded with instructions to give Shane the opportunity to rectify his failure by seeking to amend his motion to vacate to raise the issue of the constitutionality of the putative father statute, timely and properly serving the Attorney General, as required by R.C. 2721.12.

*Judgment reversed*
*and cause remanded.*

GRADY and FREDERICK N. YOUNG, JJ., concur.

---

13. *Cicco*, 89 Ohio St.3d at 101–109, 728 N.E.2d at 1071–1078 (dissenting opinions).