IN RE ADOPTION OF P.A.C.[1]

[Cite as *In re Adoption of P.A.C.*, 184 Ohio App.3d 88, 2009-Ohio-4492.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–081149.

Decided Sept. 2, 2009.

---

1. We note that the petitioner in this action sought to change the minor child's name to P.A.C. in conjunction with his adoption of the child. The probate court used the proposed name of the minor child in the case caption. For consistency, we use the case caption used by the trial court, even though the court dismissed the petition, leaving the child's birth name intact.

Voorhees & Levy, L.L.C., and Michael R. Voorhees, for appellant, Kevin Michael Crooks.

Bradley G. Braun, for appellee, Gary D. Otten.

———————

CUNNINGHAM, Judge.

{¶ 1} Kevin Michael Crooks appeals from the judgment of the Hamilton County Court of Common Pleas, Probate Division, dismissing his petition to adopt his stepdaughter, P.A.C. The probate court dismissed the adoption petition after determining that the adoption required the consent of P.A.C.'s biological father, Gary D. Otten, and that Otten had refused consent. But where Otten did not safeguard his right to object to the adoption before the petition was filed, his consent to adopt was not required. Accordingly, we reverse the probate court's judgment and remand the case for a best-interest hearing on the adoption petition.

## I. History

{¶ 2} P.A.C. was born in July 2005. Susan Tuttle ("Tuttle") is the biological mother of P.A.C. Tuttle was married to Jeremy Tuttle at the time of P.A.C.'s birth. Although Jeremy Tuttle is listed as the father on P.A.C.'s birth certificate, he is not P.A.C.'s biological father, and this was acknowledged in the Tuttles' November 2, 2005, divorce decree. Otten learned that he is P.A.C.'s biological father from the results of a private DNA test dated August 12, 2005.

{¶ 3} Otten did not timely register with the Ohio Putative Father Registry as P.A.C.'s putative father. Additionally, after P.A.C.'s birth and before Crooks petitioned to adopt P.A.C., Otten failed to "acknowledge" his paternity in the manner required by statute, and he also failed to obtain a judicial determination of paternity. But in January 2007, about 18 months after P.A.C.'s birth, Otten filed a complaint to determine parentage in the Clermont County Court of Common Pleas, Juvenile Division.

{¶ 4} About two weeks after Otten had filed his parentage action, Tuttle filed a parentage action against Otten in the same court.[2] The cases were consolidated and were scheduled for a hearing on March 26, 2007. But the juvenile court continued the hearing at Tuttle's request.

{¶ 5} On April 13, 2007, Tuttle married Crooks. On April 20, 2007, Crooks filed a petition in the Hamilton County Court of Common Pleas, Probate Division,

———————

2. Otten filed his confession of judgment admitting that he was P.A.C.'s father on May 24, 2007.

to adopt P.A.C. and to change her last name to "Crooks." Tuttle then moved to dismiss the parentage action in juvenile court on the ground that the probate court in Hamilton County had taken exclusive jurisdiction over the "issue."[3]

{¶ 6} After Otten learned of the adoption petition, he moved as P.A.C.'s "father" to dismiss or stay the adoption proceedings pending the conclusion of the parentage action in juvenile court. Otten relied on another adoption case, *In re Adoption of Pushcar*, in which the Ohio Supreme Court held that "[w]hen an issue concerning parenting of a minor is pending in the juvenile court, a probate court must refrain from proceeding with the adoption of that child."[4]

{¶ 7} Crooks opposed Otten's motion and, calling Otten P.A.C.'s "putative father," challenged Otten's standing to be heard in the adoption proceeding. Crooks cited R.C. 3107.062, which provides that a putative father who fails to timely register on the putative-father registry shall not be provided notice of the adoption hearing, and R.C. 3107.07(B), which provides that, in this circumstance, the putative father's consent to adopt is not required. Additionally, Crooks argued that *Pushcar* did not bear on the dispute because the decision involved the application of R.C. 3107.07(A), which concerns when the father's consent to adopt is not required due to a failure to support the minor or to communicate with the minor for a period of one year.

{¶ 8} In June 2007, the probate court stayed the adoption proceedings pending the outcome of the parentage action in juvenile court. After some action by the juvenile court and a series of motions by Otten and Crooks, the probate court continued the stay pending a final ruling by the juvenile court on the paternity of P.A.C. The probate court stated in its entry that "[a]t such time as the Clermont County Juvenile Court makes a final ruling as to paternity of the minor, this Court will give full faith and credit to that ruling and such status will be applicable to the adoption petition filed in our Court." Thus, the probate court stayed the adoption proceedings not just for the resolution of parentage as it might be relevant to a best-interest determination, but to determine Otten's procedural and substantive rights under the adoption statutes.

{¶ 9} Thereafter, on May 28, 2008, the juvenile court determined that Otten was P.A.C.'s biological father, granted Otten parenting time with the child, and set Otten's child-support obligation effective June 20, 2007. The probate court then lifted the stay.

{¶ 10} After the stay was lifted, Otten again moved to dismiss the adoption petition, claiming that as P.A.C.'s father his consent was required and that he

3. This motion was apparently not granted.

4. *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, syllabus.

would not give it.[5]  The probate court, consistent with its prior announcement that it would give full faith and credit to the paternity determination, considered Otten as P.A.C.'s father for the purpose of consent and determined that Otten's consent was necessary by statute for the adoption.  Because Otten refused to consent to the adoption, the probate court dismissed the petition.

{¶ 11} Crooks appeals the probate court's dismissal of the adoption petition for lack of Otten's consent.  He raises two assignments of error: (1) "The Probate Court erred by not entering a finding that the consent of the putative father is not required as a matter of law because the putative father failed to register with the Putative Father Registry," and (2) "The Probate Court erred in finding that it did not have exclusive jurisdiction over the adoption proceeding."  We find merit in the first assignment of error and hold that the probate court erred by determining that Otten's consent was necessary for the adoption.  Thus, we reverse the probate court's judgment dismissing the adoption petition.

## II.   A Putative Father

{¶ 12} Among the adoption statutes, R.C. 3107.01(H) provides that " '[p]utative father' means a man, including one under the age eighteen, who may be a child's father and to whom all of the following apply:  (1) He is not married to the child's mother at the time of * * * conception or birth;  (2) He has not adopted the child;  (3) He had not been determined, prior to the date a petition to adopt the child is filed, to have a parent and child relationship with the child by a court proceeding pursuant to sections 3111.01 to 3111.18 of the Revised Code, a court proceeding in another state, an administrative agency proceeding pursuant to sections 3111.38 to 3111.54 of the Revised Code, or an administrative agency proceeding in another state;  (4) He has not acknowledged paternity of the child pursuant to sections 3111.21 to 3111.35 of the Revised Code." [6]

{¶ 13} The statute's reliance on pre-petition events is consistent with R.C. 3107.06(B), which explains when a "father's" consent to adopt is required: "Unless consent is not required under section 3107.07 of the Revised Code, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by * * *:  (B) The father of the minor, if any of the following apply:  (1) The minor was conceived or born while the father was married to the mother;  (2) The minor is his child by adoption;  (3) Prior to the date the petition was filed, it was determined by a court proceeding pursuant to sections 3111.01 to 3111.18 of the Revised Code, a court proceeding in another state, an administrative proceeding pursuant to sections 3111.38 to 3111.54 of the Revised Code, or an

---

5.   See R.C. 3107.07(B).

6.   R.C. 3107.01(H).

administrative proceeding in another state that he has a parent and child relationship with the minor; (4) He acknowledged paternity of the child and that acknowledgement has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code."[7]

### Conditional Role of the Putative Father

{¶ 14} In legislation that became effective in 1996 and 1997, the Ohio General Assembly sought to limit a putative father's ability to interfere with an adoption if the putative father has failed to comply with clearly enunciated procedural requirements. One statute warns that "[a] man who has sexual intercourse with a woman is on notice that if a child is born as a result and the man is the putative father, the child may be adopted without his consent * * *."[8] Consent to adopt is also not required if a putative father fails to timely register with the putative father registry, usually within 30 days of the child's birth.[9] Moreover, the General Assembly has mandated that a putative father who has failed to timely register "shall not" be given notice of the hearing on the petition.[10]

{¶ 15} To register, the putative father completes a registration form, created by the department of job and family services, that includes his name, the address or telephone number where he wishes to receive notice of a petition to adopt the minor he claims as his child, and the name of the mother. He then submits the form to the department.[11] The department maintains the registry and searches the registry upon request by the mother or by the agency or attorney arranging a minor's adoption.[12] The certified results of the search must be filed in the adoption action, with certain exceptions.[13]

{¶ 16} Importantly, a putative father who timely registers claims paternity of the child from the start of the child's life. Courts have held, however, that the registration requirement is irrelevant if a putative father ceases to meet the statutory definition of a putative father before the adoption petition is filed. For example, if a putative father judicially or administratively establishes his parent-

---

7. R.C. 3107.06(B).

8. R.C. 3107.061.

9. R.C. 3107.07(B) and 3107.062. Consent is not required from a timely registered putative father who is not the biological father.

10. R.C. 3107.11.

11. R.C. 3107.062.

12. R.C. 3107.063.

13. R.C. 3107.064.

age before the filing of the adoption petition, he ceases to be a putative father, and like any other father, his consent to the adoption is required unless an exception applies, regardless of his failure to timely register with the putative-father registry.[14]

### III. *In re Adoption of Pushcar*

{¶ 17} In determining that Otten's consent was required for the adoption, the probate court considered Otten to be P.A.C.'s father, not her putative father, because Otten had initiated the parentage action that established his paternity before Crooks filed the adoption petition. The probate court and Otten relied on the Ohio Supreme Court's decision in *In re Adoption of Pushcar*.[15] But *Pushcar* did not involve the legal significance of a putative father's failure to timely register with the putative-father registry.

{¶ 18} *Pushcar* involved a stepparent adoption in which the petitioner had alleged that the consent of the "father" was not required under R.C. 3107.07(A) based upon the father's failure to communicate with or support the child for a one-year period "immediately preceding either the filing of the adoption petition or the placement * * * in the home of the petitioner."[16] The father in *Pushcar* was not married to the child's mother at the time of the child's birth, but he had signed the birth certificate, which had automatically entered him as the child's legal father in the Centralized Paternity Registry under a former law.[17] Yet because he had not judicially or administratively established paternity, the duty of child support was not triggered as contemplated under R.C. 3107.07(A).[18] Moreover, the father had instituted a parentage action in juvenile court that was pending when the adoption petition was filed, and its outcome could have established the starting point for R.C. 3107.07(A).[19] Despite these circumstances, the probate court determined that the father had not communicated with or supported his child for a one-year period and allowed the adoption without the father's consent.[20]

---

**14.** *In re Adoption of Law*, 3d Dist. No. 1–05–64, 2006-Ohio-600, 2006 WL 319141, at ¶ 15, citing *In re Adoption of Baby Boy Brooks* (2000), 136 Ohio App.3d 824, 830, 737 N.E.2d 1062.

**15.** *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647.

**16.** See *Pushcar* at ¶ 5.

**17.** Id. at ¶ 1.

**18.** See id. at ¶ 12.

**19.** Id. at ¶ 14.

**20.** Id. at ¶ 6.

{¶ 19} The appellate court reversed.[21] First, in response to the father's argument that the probate court had lacked jurisdiction to proceed with the adoption because a previously filed parentage action was pending in juvenile court, the court of appeals held that the probate court did have jurisdiction to consider the adoption petition, but that it should have refrained from proceeding until the juvenile court had adjudicated the parentage action to its conclusion.[22] Second, citing *In re Adoption of Sunderhaus*,[23] the court held that the adoption could not proceed under R.C. 3107.07(A), as the petitioner had failed to prove that the exception to the consent requirement under that subsection had been satisfied.[24] In *Sunderhaus*, the Ohio Supreme Court had interpreted the statute as requiring a paternity determination before the running of the one-year period so that the subsection would comport with the "requirements of due process and the plain meaning of its provisions."[25]

{¶ 20} The petitioner in *Pushcar* appealed the appellate court's decision to the Ohio Supreme Court. The Supreme Court reaffirmed its holding in *Sunderhaus* concerning the interpretation of R.C. 3107.07(A) and affirmed the appellate court's determination that the probate court should have refrained from proceeding with the adoption of the child when an issue concerning the parentage of the child was pending in juvenile court.[26]

### *Pushcar* Distinguished

{¶ 21} *Pushcar* involved the application of R.C. 3107.07(A) as an exception to the requirement of a father's consent to adopt, not the application of R.C. 3107.07(B)(1) and 3107.11, which are at issue in this case. Here, the probate court determined that this difference was irrelevant because the *Pushcar* court's analysis inherently involved whether to strictly construe the statutory requirement that to be considered a "father," paternity must be judicially established before the date the adoption petition is filed. The probate court characterized the man contesting the adoption in *Pushcar* as a "putative father" at the time the petition was filed because of the absence of a paternity determination. The probate court concluded that the Ohio Supreme Court had not strictly construed

---

21. *In re Adoption of Pushcar*, 11th Dist. No. 2005–L–050, 2005-Ohio-5114, 2005 WL 2372761.

22. Id. at ¶ 29–32.

23. *In re Adoption of Sunderhaus* (1992), 63 Ohio St.3d 127, 585 N.E.2d 418.

24. *Pushcar*, 2005-Ohio-5114, 2005 WL 2372761, at ¶ 25.

25. *Sunderhaus* at 132, 585 N.E.2d 418.

26. *Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647.

the time requirement. As a result, the probate court maintained that it was required to determine Otten's status based upon the juvenile court's parentage determination, and that it could ignore the application of R.C. 3107.11 and 3107.07(B)(1).

{¶ 22} But the probate court's analysis did not take into account that the man contesting the adoption in *Pushcar* had signed the birth certificate, which appears to be the equivalent of an "acknowledgement" under former law because it had resulted in his automatic enrollment on the Centralized Paternity Registry as the legal father, and at the very least had safeguarded his right to notice and consent. Importantly, the *Pushcar* court did not use the paternity determination to avoid the application of R.C. 3107.07(B)(1) and 3107.11. Moreover, the petitioner in *Pushcar* had specifically relied on R.C. 3107.07(A) to support his claim that the probate court had jurisdiction to grant the petition without the consent of the minor child's father. Thus, the issue before this court—the interpretation and application of R.C. 3107.07(B)(1) and 3107.11—was not even contemplated by the *Pushcar* court.

{¶ 23} After our review, we reject the probate court's conclusion that the Ohio Supreme Court in *Pushcar* intended to override the General Assembly's clear statutory directives with regard to a putative father who has failed to timely register or otherwise safeguard his rights to notice of and consent to an adoption.

### IV. Clear Statutory Mandate

{¶ 24} The adoption statutes at issue in this case, R.C. 3107.07(B)(1) and R.C. 3107.11, unequivocally express the General Assembly's intent to strictly enforce the registration requirement where a man has not otherwise safeguarded his right to be heard on an adoption.

{¶ 25} Otten's interpretation of the statute, as adopted by the probate court, would require us to rewrite the statute, not to construe it in his favor. We recognize that the Ohio Supreme Court has often acknowledged the fundamental right of "natural parents" to the care and custody of their children, and that any exception to the requirement of parental consent must be strictly construed because adoption terminates that fundamental right.[27] And we recognize that parental consent, when required, is a jurisdictional prerequisite to a valid adoption.[28] Moreover, we know, as the General Assembly does, that a putative father can be a biological father. This is why, we believe, the General Assembly has created strict deadlines for the procedural requirements at issue in this case.

---

27. *Pushcar,* 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, at ¶ 11.

28. *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 657, 665 N.E.2d 1070.

We can only conclude that the statutes mean this: If you fail to timely register on the putative father registry, or if you fail to take other enumerated action *before* the petition is filed, then, as here, your child can be adopted without notice and your consent.

{¶ 26} Our adherence to the procedural mandates may appear inequitable in this case, but it is required in light of the statutory language. We follow the Ohio Supreme Court's holding in *In re Adoption of Zschach*, in which the court strictly adhered to a different procedural mandate against a putative father in a former version of R.C. 3107.07(B), because "the state's interest in facilitating the adoption of children and having the adoption proceeding completed expeditiously justifies such a rigid application."[29]

{¶ 27} Otten could have protected his substantive and procedural rights by several means, including timely registering on the putative-father registry. If he had done so, he would have avoided the "race to the courthouse" that he now condemns, and he would have demonstrated his acceptance of his responsibility to P.A.C. within the first month of her birth, a time period that the General Assembly considers more important than Otten does.

{¶ 28} We conclude that the General Assembly could have easily worded the statutes differently, but it did not. Because of the wording of the statutes, on the date the petition was filed, Otten's status was that of a "putative father" who had not timely registered. Thus, we conclude that his consent was not required for the adoption, despite the juvenile court's subsequent declaration of parentage. The probate court erred by holding otherwise. Thus, we find merit in Crooks's first assignment of error.

## V. Jurisdiction

{¶ 29} In his second assignment of error, Crooks argues that "the probate court erred in finding that it did not have exclusive jurisdiction over the adoption proceeding." But the probate court never found that it did not have exclusive jurisdiction over the adoption proceeding. And the probate court, not the juvenile court, ruled on the adoption petition and ultimately dismissed it for lack of Otten's consent. Because the record does not support Crooks's argument, we overrule the second assignment of error.

## VI. Conclusion

{¶ 30} The probate court erred by failing to hold that this case was subject to the statutory exception to the consent requirement of a putative father in an

---

**29.** *Zschach* at 652, 665 N.E.2d 1070, citing *Lehr v. Robertson* (1983), 463 U.S. 248, 265, 103 S.Ct. 2985, 77 L.Ed.2d 614.

adoption proceeding. Otten failed to timely register on the putative-father registry, and he met the definition of a putative father on the date the adoption petition was filed, so he was not entitled to notice of the adoption hearing and his consent was not required for the adoption. Thus, the probate court's judgment dismissing the petition for lack of Otten's consent was erroneous. We reverse the judgment and remand this case for the probate court to hold a best-interest hearing on the adoption petition.

Judgment reversed
and cause remanded.

HENDON, P.J., and PAINTER, J., concur.