Pfeifer, J.
{¶ 1} In In re Adoption of Pushcar, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, this court stated, “The issue presented for our review is whether a probate court must refrain from proceeding with the adoption of a child when an issue concerning the parenting of that child is pending in the juvenile court. We hold that, in such circumstances, the probate court must defer to the juvenile court and refrain from addressing the matter until adjudication in the juvenile court.” Id. at ¶ 8. We consider our holding in Pushcar to be dispositive of the issue before us and reverse the judgment of the court of appeals.
Facts and Procedural History
{¶ 2} In July 2005, while married to Jeremy Tuttle, Susan Tuttle (“Tuttle”) gave birth to P.A.C. Although Jeremy Tuttle was listed as P.A.C.’s father on her birth certificate, he is not her biological father. A DNA test conducted in August 2005 determined that appellant, Gary D. Otten, is P.A.C.’s biological father.
{¶ 3} In January 2007, Otten filed a complaint for allocation of parental rights in juvenile court in Clermont County. Shortly thereafter, Tuttle filed a parentage action against Otten. These cases were consolidated, and a hearing was set for March 26, 2007, but was continued at Tuttle’s request. Tuttle, who was divorced from Jeremy Tuttle in November 2005, married appellee, Kevin Michael Crooks, on April 13, 2007. On April 20, 2007, Crooks filed a petition to adopt P.A.C. in probate court in Hamilton County.
{¶ 4} The probate court stayed the adoption proceedings pending a determination in the parentage action. The juvenile court determined that Otten was the biological father of P.A.C. The probate court lifted its stay, determined that a parent, Otten, did not consent to the adoption, as required by R.C. 3107.06, and dismissed Crooks’s adoption petition. On appeal, the court of appeals reversed, concluding that Otten’s failure to register with the Putative Father Registry was dispositive. We accepted Otten’s discretionary appeal.
Analysis
{¶ 5} “[T]he right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law.” In re Adoption of Masa (1986), 23 Ohio St.3d 163, 164, 23 OBR 330, 492 N.E.2d 140, citing Santosky v. Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. Santosky has been characterized as “requiring a clear and convincing evidence standard for *238 termination of parental rights because the parent’s interest is fundamental but the State has no legitimate interest in termination unless the parent is unfit, and finding that the State’s interest in finding the best home for the child does not arise until the parent has been found unfit.” Cruzan v. Dir., Missouri Dept. of Health (1990), 497 U.S. 261, 319, 110 S.Ct. 2841, 111 L.Ed.2d 224 (Brennan, J., dissenting).
{¶ 6} “Few consequences of judicial action are so grave as the severance of natural family ties.” Santosky, 455 U.S. at 787, 102 S.Ct. 1388, 71 L.Ed.2d 599 (Rehnquist, J., dissenting). Because adoption terminates fundamental rights of the natural parents, “we have held that ‘ * * * [a]ny exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the right of natural parents to raise and nurture their children.’ ” In re Adoption of Masa, 23 Ohio St.3d at 165, 23 OBR 330, 492 N.E.2d 140, quoting In re Schoeppner (1976), 46 Ohio St.2d 21, 24, 75 O.O.2d 12, 345 N.E.2d 608. With “a family association so undeniably important * * * at stake,” we approach the case before us “mindful of the gravity” of the circumstances and the long-term impact on all the concerned parties. M.L.B. v. S.L.J. (1996), 519 U.S. 102, 117, 117 S.Ct. 555, 136 L.Ed.2d 473. We turn now to our most recent pronouncement in this important and contentious area of the law.

In re Adoption of Pushcar

{¶ 7} In Pushcar, the child’s mother married a man who was not the biological father of the child, and that man attempted to adopt the child. 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647. The natural father, who had not yet been determined to be the father, opposed the adoption, and the issue was whether his consent was necessary. We concluded that the father could not be shown to have failed to communicate with or failed to support his child for one year pursuant to R.C. 3107.07(A) until one year had elapsed from the time his paternity was established. Id. at ¶ 14. An integral part of our analysis was our holding that the probate court could not proceed with the adoption while “an issue concerning the parenting of that child is pending in the juvenile court.” Id. at ¶ 8.
{¶ 8} Although the case involved a relatively narrow issue, our holding was more general, as memorialized in the syllabus: “When an issue concerning parenting of a minor is pending in the juvenile court, a probate court must refrain from proceeding with the adoption of that child.” It is clear that we did not intend our holding or analysis to be restricted to parenting issues implicated by R.C. 3107.07(A). Rather, our use of general language shows that we intended the holding to apply to all parenting issues pending in a juvenile court.

*239
Application of Pushcar

{¶ 9} We consider it beyond dispute that when, as here, a man files an action for allocation of parental rights supported by a DNA test that declaims the probability that he is the father to be 99.99995 percent and when the mother of the child files an action to determine parentage claiming that that man is the father of the child, “an issue concerning parenting of a minor is pending.” Accordingly, the probate court properly stayed the adoption proceedings before it.
{¶ 10} The probate judge in this case correctly determined that we would not have required the stay in Pushcar if it were to have no effect. The judge stated:
{¶ 11} “[T]he Supreme Court [in Pushcar ] did not strictly construe the statutory requirement that, to be considered a ‘father’ under RC 3107.06(B)(3), paternity must have been established prior to the date the adoption petition was filed.
{¶ 12} “This is apparent because, despite the fact that the paternity action was pending in Pushcar when the adoption petition was filed, and thus, paternity was not established prior to the filing of the adoption petition, the Supreme Court did not find that it was too late for the paternity action to render the man contesting the adoption a ‘father’ under RC 3107.06(B)(3).” (Emphases sic.)
{¶ 13} Based on this analysis, the probate judge concluded as follows: “Push-car applies to the instant case; * * * under Pushcar, this Court was required to refrain from proceeding with the adoption petition until the Clermont County Juvenile Court’s adjudication of the parentage action; * * * this Court should give effect to the Clermont County Juvenile Court’s determination of the existence of a parent-child relationship; and that given said determination of paternity, Mr. Otten’s status is that of ‘father.’ ” We conclude that the probate judge properly applied Pushcar.
Conclusion
{¶ 14} The probate judge did not err. We reverse the judgment of the court of appeals.
Judgment reversed.
Lundberg Stratton, O’Connor, and O’Donnell, JJ., concur.
Brown, C.J., and Lanzinger and Cupp, JJ., dissent.