[Cite as *In re Adoption of G.B.*, 2010-Ohio-5059.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

IN THE MATTER OF:

CASE NO.  13-10-01

THE PETITION OF ADOPTION OF

G.B., A MINOR,

**O P I N I O N**

[WESLEY F. -
    APPELLANT].

Appeal from Seneca County Common Pleas Court
Probate Division
Trial Court No. 20075003

Judgment Reversed and Cause Remanded

Date of Decision:  October 18, 2010

APPEARANCES:

    *Barbara L. Marley*  for Appellant

    *Karen S. Behm and James W. Fruth*  for Appellee, Paul B.

    *Kent D. Nord*  for Appellee, Christina B.

Case No. 13-10-01

**ROGERS, J.**

{¶1} Appellant, Wesley F., appeals the judgment of the Court of Common Pleas of Seneca County, Probate Division, overruling his motion to dismiss the petition for the adoption of his biological child, G.B., by Appellee, Paul B. On appeal, Wesley argues that the trial court erred in finding that he was a putative father pursuant to R.C. 3107.01 and that, consequently, his consent was not required for the adoption. Based upon the following, we reverse the judgment of the trial court.

{¶2} In February 2007, Paul filed a petition pursuant to R.C. 3107.05 for adoption of G.B., the minor son of his fiancée, Appellee, Christina N., nka Christina B. The petition asserted that "[n]o person has timely registered pursuant to R.C. 3107.062 as a putative father of the minor * * *" and specifically listed Wesley as a person whose consent to the adoption was *not* required. Attached to the petition was G.B.'s birth certificate, which listed Paul as the child's father. Additionally, the "Notice of Hearing on Petition for Adoption" reflected that notice was issued to Wesley that Paul had filed a petition for adoption of G.B.[1] Shortly thereafter, Wesley filed an objection to the adoption petition, claiming that a parentage action was already pending in the Court of Common Pleas of Seneca County, Juvenile Division.

---

[1] The record does not indicate why notice was issued to Wesley.

{¶3} In March 2007, Wesley was deposed and stated that he did not register with the Ohio Putative Father Registry within thirty days of G.B.'s birth; that Christina was his ex-girlfriend whom he dated for approximately seven years; that he learned of her pregnancy when Christina was approximately six months pregnant; that Christina told him that the child might be his, but that she was not sure; that he asked Christina to do DNA testing, and she refused; that he did not see Christina or provide her with financial assistance for the remainder of her pregnancy; that he did not see G.B. until he was five or six months old; that he was aware of Christina's address and phone number during that time period; and, that he purchased G.B. a hat and two outfits, and gave Christina $15 or $20 to purchase diapers, but had not otherwise financially supported the child. Additionally, thereafter, Paul filed a "Putative Father Registry Certification" reflecting that no putative father of G.B. was registered as of February 2, 2007.

{¶4} In April 2008, Paul orally moved the court for an order dismissing Wesley as a party to the adoption proceedings, asserting that he was not a proper party pursuant to R.C. 3107.07(B)(1) because, at the time Paul filed his adoption petition, Wesley was not married to Christina, had not adopted G.B., and had not been determined by any court to have a parent/child relationship with G.B. by any method described in R.C. 3107.01(H), and because Wesley had not registered with

the Putative Father Registry prior to February 7, 2007. Consequently, Paul argued that Wesley's consent was not required for the adoption pursuant to R.C. 3107.11.

{¶5} In October 2009, Wesley filed a motion to dismiss Paul's adoption petition, arguing that Paul could not file a valid adoption petition because he was listed as G.B.'s father on the child's birth certificate; that, at the time the adoption petition was filed, DNA testing had not yet been conducted, and, thus, Paul was the presumed father at that time; that, as Paul was the presumed father at the time he filed the adoption petition, the petition was a nullity; and, that, because a January 2008 judgment entry from the juvenile court adjudicated Wesley as G.B.'s father, the Probate Court could not proceed with the adoption.

{¶6} In November 2009, the trial court held a hearing on Wesley's motion to dismiss the petition and made the following findings of fact:

> 1.  **The date of birth of the minor to be adopted is July 29, 2005.**
> 2.  **On December 6, 2006, there was a complaint filed by [Wesley] against [Christina] and [Paul] to Establish Parentage, Child Support, and Medical Expenses.**
> 3.  **On January 12, 2007, an Answer was filed.**
> 4.  **On February 7, 2007, a Petition for Adoption was filed by [Paul] to adopt the minor.**
> 5.  **On February 28, 2007, a certification of a putative father registry search was filed and accepted by the court on March 1, 2007.**
> 6.  **On February 8, 2007, DNA was ordered, which was done on March 5, 2007, and filed on April 26, 2007.**
> 7.  **[Wesley] is a man who was adjudicated by the Juvenile Court to be the child's father pursuant to the Judgment Entry filed on April 2, 2009 in Juvenile Case No. 20670219.**

**8.** **[Wesley] was never married to [Christina].**
**9.** **[Wesley] had not adopted the minor.**
**10.** **[Wesley] was not determined prior, to the date a Petition to Adopt was filed, to have a parent and child relationship with the child by a court proceeding pursuant to Ohio Revised Code §3111.18, or a court proceeding in another state, an administrative agency proceeding pursuant to §3111.38 to §3111.54, or an administrative agency proceeding in another state.**
**11.** **[Wesley] has not acknowledged paternity of the child pursuant to §3111.35 of the Ohio Revised Code.**

(Dec. 2009 Nunc Pro Tunc Judgment Entry, pp. 1-2). Additionally, the trial court

concluded that:

**1.** **[Wesley] is a putative father as defined by Ohio Revised Code §3107.01(H).**
**2.** **The Petition for Adoption of a Minor filed by petitioner alleges that [Wesley], as putative father failed to register as the minor's putative father consistent with Ohio Revised Code 3107.07(B)(1).**
**3.** **[Wesley] was not determined prior, to the date a Petition to Adopt was filed, to have a parent and child relationship with the child by a court proceeding pursuant to Ohio Revised Code §3111.18, or a court proceeding in another state, an administrative agency proceeding pursuant to §3111.38 to §3111.54, or an administrative agency proceeding in another state.**
**4.** **[Wesley] has not acknowledged paternity of the child pursuant to §3111.21 to §3111.35 of the Ohio Revised Code.**
**5.** **Consistent with Ohio Revised Code 3107.07(B)(1), the consent of [Wesley] is not required for the adoption of [G.B.] because [Wesley] is the putative father and he failed to register as the minor's putative father with the putative father registry established under Section 3107.062 of the Revised Code not later than thirty days after the minor's birth.**
**6.** **Consistent with Ohio Revised Code 3107.11(A)(3), notice of further proceedings on the Petition for Adoption of a Minor**

> **shall not be given to [Wesley] because his consent is not required as provided by division (B) of Section 3107.07.**

(Id. at p. 3). Accordingly, the trial court overruled Wesley's motion to dismiss Paul's adoption petition, dismissed Wesley as a party to the adoption proceedings, and directed that Wesley not be notified of future hearings regarding the adoption petition.

{¶7} It is from this judgment that Wesley appeals, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT'S [SIC] IS NOT A NECESSARY PARTY TO THIS MATTER.**

### *Assignment of Error No. II*

**THE TRIAL COURT ERRED IN FINDING THAT THE CONSENT OF [WESLEY] WAS NOT NECESSARY IN THIS MATTER.**

{¶8} Due to the nature of Wesley's assignments of error, we elect to address his arguments together.

### *Assignments of Error No. I*

{¶9} In his first assignment of error, Wesley argues that the trial court erred in finding that he was not a necessary party to the adoption action. In his second assignment of error, Wesley argues that the trial court erred in finding that his consent was not necessary for the adoption. Specifically, he contends that he

was not aware of the Putative Father Registry until the registration deadline had expired; that, as soon as he became aware that G.B. could be his biological son, he filed an action in the juvenile court to determine paternity and obtain companionship rights and the obligation to pay support; that Paul's act of signing G.B.'s birth certificate was an acknowledgement that he was the child's father, making Paul's adoption petition a nullity; and, that the legislature could not have intended the putative father statute, R.C. 3111.03, to allow the mother's husband, whose paternity was rebutted, to petition to adopt on the grounds that the biological father failed to timely file with the Putative Father Registry. Finding that the Supreme Court of Ohio's recent decision in *In re Adoption of P.A.C.*, 126 Ohio St.3d 236, 2010-Ohio-3351 ("*P.A.C. II*"), controls, we must reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

{¶10} Initially, we will address Wesley's argument that Paul's act of signing G.B.'s birth certificate was an acknowledgement that he was the child's father, causing his subsequent adoption petition to be a nullity.

{¶11} R.C. 3111.03 governs presumptions as to father and child relationships, and provides that a man is presumed to be the natural father of a child under certain enumerated circumstances. The man's act of signing the child's birth certificate or consenting to being named as the child's father on the

birth certificate is not listed among the current circumstances giving rise to the presumption, as these circumstances were deleted from the statute by 1997 H 352, effective January 1, 1998. See, e.g., *Crago v. Kinzie* (2000), 106 Ohio Misc.2d 51 (discussing the former statute's presumption of paternity where a man signed the child's birth certificate). Thus, as Paul has argued, his act of signing the child's birth certificate did not result in a presumption that he was the child's father. Consequently, as no other circumstances in R.C. 3111.03 were present and Paul was not the presumed father, we do not find that his subsequent petition to adopt G.B. was void. Accordingly, we turn to Wesley's remaining arguments.

{¶12} R.C. 3107.01(H) provides that a putative father is "a man, including one under age eighteen, who may be a child's father and to whom all of the following apply":

**(1)  He is not married to the child's mother at the time of the child's conception or birth;**

**(2)  He has not adopted the child;**

**(3)  He has not been determined, prior to the date a petition to adopt the child is filed, to have a parent and child relationship with the child by a court proceeding pursuant to sections 3111.01 to 3111.18 of the Revised Code, a court proceeding in another state, an administrative agency proceeding pursuant to sections 3111.38 to 3111.54 of the Revised Code, or an administrative agency proceeding in another state;**

**(4)  He has not acknowledged paternity of the child pursuant to sections 3111.21 to 3111.35 of the Revised Code.**

{¶13} Concerning the Putative Father Registry, R.C. 3107.062 provides, in pertinent part:

> **The department of job and family services shall establish a putative father registry. To register, a putative father must complete a registration form prescribed under section 3107.065 of the Revised Code and submit it to the department. The registration form shall include the putative father's name; the address or telephone number at which he wishes to receive, pursuant to section 3107.11 of the Revised Code, notice of a petition to adopt the minor he claims as his child; and the name of the mother of the minor.**
>
> **A putative father may register before or not later than thirty days after the birth of the child. * * ***

Additionally, R.C. 3107.061 governs adoption of a child without the putative father's consent, and provides that "[a] man who has sexual intercourse with a woman is on notice that if a child is born as a result and the man is the putative father, the child may be adopted without his consent pursuant to division (B) of section 3107.07 of the Revised Code." Further, R.C. 3107.07 provides, in pertinent part:

> **Consent to adoption is not required of any of the following:**
> **\* \* \***
>
> **(B) The putative father of a minor if either of the following applies:**
>
> **(1) The putative father fails to register as the minor's putative father with the putative father registry established under section 3107.062 of the Revised Code not later than thirty days after the minor's birth[.]**

{¶14} The First Appellate District recently examined a similar factual situation involving the same statutory provisions in *In re Adoption of P.A.C.*, 184 Ohio App.3d 88, 2009-Ohio-4492 ("*P.A.C. I*"), reversed by *P.A.C. II*, 126 Ohio St.3d 236. In *P.A.C. I*, a child was born in July 2005 to a mother who was married at the time of the child's birth to a man who was not the child's father, but nevertheless signed the child's birth certificate. Thereafter, the mother and her first husband divorced, and the child's biological father learned that he was the biological father, but failed to timely register with the Putative Father Registry as the child's putative father. Thereafter, in January 2007, eighteen months after the child's birth, the biological father filed a complaint to determine parentage with the juvenile court. Several months later, in April 2007, the mother remarried and her second husband filed a petition to adopt the child in the probate court. The probate court stayed the adoption proceedings pending determination of the parentage action. Prior to the second husband's filing of the adoption petition, the biological father had failed to statutorily acknowledge his paternity or obtain a judicial determination of paternity. In May 2008, the juvenile court determined the paternity of the child, and the probate court lifted the stay and dismissed the adoption petition because the biological father refused to consent.

{¶15} On appeal, the First Appellate District found that, under the language of R.C. 3107.01, 3107.061, 3107.062, and 3107.07, the biological father

was a putative father who had failed to timely register, and his consent was not required for the child's adoption, despite the juvenile court's declaration of his parentage after the adoption petition was filed. The Court, in summary, concluded that "[i]f you fail to timely register on the putative father registry, or if you fail to take other enumerated action *before* the [adoption] petition is filed, then, as here, your child can be adopted without notice and your consent." (Emphasis in original) Id., 184 Ohio App.3d at 96. The Court based its conclusion on its finding that the adoption statutes at issue "unequivocally express the General Assembly's intent to strictly enforce the registration requirement where a man has not otherwise safeguarded his right to be heard on an adoption." Id., 184 Ohio App.3d at 95. Additionally, the Court found that, despite the appearance of any inequity, "'the state's interest in facilitating the adoption of children and having the adoption proceeding completed expeditiously justifies such a rigid application.'" Id., 184 Ohio App.3d at 96.

{¶16} The Supreme Court's recent decision in *P.A.C. II*, 126 Ohio St.3d 236, reversed the judgment of the First Appellate District, applying the holding of *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572: "[w]hen an issue concerning parenting of a minor is pending in the juvenile court, a probate court must refrain from proceedings with the adoption of that child." Despite the narrow issue considered in *Pushcar*, the Supreme Court in *P.A.C. II* stated that the

general language of the holding demonstrated its intent to apply the holding to all parenting issues pending in juvenile court. The Supreme Court continued on to find that the probate court had appropriately dismissed the adoption petition because the biological father refused to consent, agreeing with, and quoting, the probate court's decision:

> **"[T]he Supreme Court [in *Puschar*] did not strictly construe the statutory requirement that, to be considered a 'father' under RC 3107.06(B)(3), paternity must have been established *prior to the date the adoption petition was filed*.**
>
> **"This is apparent because, despite the fact that the paternity action was *pending* in *Pushcar* when the adoption petition was filed, and thus, paternity was not established *prior to the filing of the adoption petition*, the Supreme Court did not find that it was too late for the paternity action to render the man contesting the adoption a 'father' under RC 3107.06(B)(3).**
>
> **\* \* "*Pushcar* applies to the instant case; \* \* \* under *Puschar*, [the probate court] was required to refrain from proceeding with the adoption petition until the [juvenile court's] adjudication of the parentage action; \* \* \* [the probate court] should give effect to the [juvenile court's] determination of the existence of a parent-child relationship; and that given said determination of paternity, [the biological father's] status is that of 'father.'"**

126 Ohio St.3d 236, at ¶¶11-13.

**{¶17}** Here, we find that, analogous to the situation in *P.A.C. I and II*, Wesley's action to determine parentage was pending in juvenile court when Paul filed his adoption petition in the probate court, and the probate court was required to stay the proceedings pending the juvenile court determination. Under the Supreme Court's holding in *P.A.C. II*, the probate court was required to give effect

to the juvenile court's determination of the existence of a parent-child relationship between Wesley and G.B. and to find that Wesley's status was that of "father." Consequently, we find that the trial court erred in finding that Wesley was not a necessary party to the adoption action and that his consent was not necessary for the adoption.

{¶18} Accordingly, we sustain Wesley's first and second assignments of error.

{¶19} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**