## In re CAMERON.

**Napier, Appellant,**

v.

**Adoption Parents of Cameron, Appellee.**

[Cite as *In re Cameron*, 153 Ohio App.3d 687, 2003-Ohio-4304.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030250.

Decided Aug. 15, 2003.

---

Leslie F. Thomas, for appellant.

Ellen Essig, for appellee.

GORMAN, Judge.

{¶ 1} The plaintiff-appellant, Tommy Lee Napier, appeals from the order of the trial court denying his motion to set aside the court's judgment granting the adoption of a minor child, DaShawn Montez Cameron. In his two assignments of error, Napier, the putative father of the child, contends that the trial court's

failure to grant him a hearing on the issue of whether his consent was required to the adoption violated his constitutional right to due process and was otherwise an abuse of the trial court's discretion. For the following reasons, we affirm the trial court.

{¶ 2} Although Napier appeals from the order of the probate court, the disposition of the minor child in this matter began in juvenile court. On August 22, 2001, the juvenile court terminated parental rights and awarded permanent custody of the child to Adoption Circle, a licensed adoption agency with offices in Columbus, Ohio. The child's birth mother, Michelle Cameron, had placed the child with the adoption agency on April 14, 2001, or approximately four months earlier. The child was approximately 13 months old at the time of placement. It is undisputed that Napier had not placed his name on the Putative Father Registry established under R.C. 3107.062 within thirty days of the child's birth, as required by the statute. (Such registration was not achieved until December 11, 2001.) Consequently, Adoption Circle's search of the registry, when moving for permanent custody in the juvenile court, revealed no putative father. Cameron appears to have purposely failed to notify the juvenile court of Napier's claim of parentage. Napier therefore did not receive actual notice of the custody proceeding, but notice was perfected through publication.

{¶ 3} The juvenile court's August 22, 2001 order terminating parental rights and granting permanent custody was never appealed. On October 9, 2001, Adoption Circle, having been granted permanent custody of the child, executed a consent to his adoption. The prospective adoptive parents filed a petition for adoption with the probate court on October 19, 2001. In the same month, Cameron finally disclosed to Napier that she had relinquished the child to Adoption Circle for adoption. Napier then began a series of contacts with the agency, objecting to the adoption, and became aware, allegedly for the first time, of the Putative Father Registry. On December 4, 2001, Napier sent to the Ohio Department of Job and Family Services ("ODJFS") a proper registration form for the Putative Father Registry, and on December 11, 2001, he received a letter from the department that his application would be entered in the registry, although he had failed to file within the required thirty-day period after the child's birth. ODJFS also stated to Napier that it would notify the court of the registration.

{¶ 4} Although made aware that Napier had been entered in the registry, Adoption Circle took the position that his registration was untimely and that, without any legal declaration that Napier was the father of the child, the prospective adoption should go forward. The probate court granted the petition for adoption on December 20, 2001. Apparently unaware that the adoption had been granted, on January 25, 2002, Napier filed a complaint in juvenile court for a

determination of paternity. On February 4, 2002, the complaint was dismissed, without prejudice, on the basis of the adoption. According to Napier, he first learned of the adoption when informed by a prosecutor that his paternity action had been dismissed. He then filed a motion in probate court to set aside the adoption. A magistrate ordered the submission of position briefs but did not grant oral argument.

{¶ 5} In a decision dated November 4, 2002, the magistrate found that the motion to set aside the adoption was timely filed, since it came within one year of the adoption decree. See R.C. 3107.16. But the magistrate noted that, pursuant to R.C. 3107.07(D), once parental rights had been terminated, the consent of the child's birth parents to the petition for adoption was no longer required. The magistrate then stated, "While this magistrate is not without sympathy to Mr. Napier's plight, any argument regarding the determination of the sufficiency of notice to birth father [of the custody proceedings in juvenile court] or the validity of the Juvenile Court's action must be raised with the Juvenile Court. The Probate Court is without jurisdiction to address the wrongs perceived by Mr. Napier in the Juvenile Court proceedings."

{¶ 6} Although determining that the juvenile court's termination of parental rights was sufficient to eliminate any requirement that Napier have consented to the adoption, the magistrate proceeded to discuss the issue of Napier's status as putative father and the constitutionality of Ohio's Putative Father Registry. Relying on *Lehr v. Robertson* (1983), 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614, the magistrate concluded that the requirement that an out-of-wedlock father register as a putative father in order to receive notice of any proceeding to adopt his child did not violate due process. Furthermore, since Napier had not (1) legally acknowledged paternity, (2) timely filed an action requesting a paternity determination, or (3) timely registered with the Putative Father Registry, the magistrate concluded that the Ohio legislature had intended that he not have a right to oppose the adoption, even if he were, in fact, the birth father.

{¶ 7} Napier subsequently filed written objections to the decision of the magistrate. The trial court held oral arguments on the objections on February 25, 2003, and adopted the decision of the magistrate on March 4, 2003.

{¶ 8} Before discussing Napier's two assignments of error, we point out that neither assignment directly challenges the juvenile court's order terminating parental rights and granting permanent custody to Adoption Circle. That order was never appealed. Rather, the assignments of error challenge only Napier's right to have been heard on the matter of the adoption. But, as the magistrate pointed out, R.C. 3107.07(D) specifically provides that consent to adoption is not required of "[a] parent whose parental rights have been terminated by order of a juvenile court under Chapter 2151. of the Revised Code."

{¶ 9} More specifically, the statutes provide that the consent of a putative father who has not registered his name on the Putative Father Registry within thirty days of the child's birth is not required to an adoption. R.C. 3107.07(B)(1). Napier meets the definition of a putative father under R.C. 3107.01(H)(1) through (4), since he may be the child's father and (1) was not married to Cameron at the time of the child's birth, (2) has not adopted the child, (3) was not determined prior to the adoption to be the child's parent, and (4) has not acknowledged paternity pursuant to R.C. 3111.21 and 3111.35.

{¶ 10} As the child's putative father, R.C. 3107.061 applies to his status. It states, "A man who has sexual intercourse with a woman is on notice that if a child is born as a result and the man is the putative father, the child may be adopted without his consent pursuant to division (B) of section 3107.07 of the Revised Code."

{¶ 11} Finally, R.C. 3107.07(B)(1) states that the consent of the putative father is not required for an adoption if the putative father "fails to register as the minor's putative father with the putative father registry * * * not later than thirty days after the minor's birth."

{¶ 12} In his first assignment of error, Napier asserts that the trial court "abused its discretion when it did not set a hearing to determine whether [his] consent was required to the placement prior to the final adoption hearing." In support of this argument, Napier cites two cases in which the putative fathers succeeded in challenging adoptions even though they had not complied with Ohio's Putative Father Registry. Both of these cases, however, are easily distinguishable. In the first, the probate court had failed to consider that the putative father had complied with the Indiana Putative Father Registry, as well as the effect of the registration under the Interstate Compact Placement of Children ("ICPC"). *In the Matter of the Adoption of Lichtenberg* (Mar. 5, 2003), 12th Dist. No. CA2002–11–125, 2003-Ohio-1014, 2003 WL 868306. In the second case, the father had been adjudicated to have a parent-child relationship with the child *before* the adoption petition was filed. *In re Adoption of Baby Boy Brooks* (2000), 136 Ohio App.3d 824, 737 N.E.2d 1062. Neither of these situations is present here.

{¶ 13} In his second assignment of error, Napier again asserts that the trial court "abused its discretion" by not granting him "the opportunity to have notice and hearing on this matter." Initially, we note that the trial court did not deny Napier an opportunity to be heard on the matter of the adoption. The magistrate considered his motion to set the adoption aside on the briefs, and then the trial court allowed oral argument on Napier's objections to the magistrate's decision. Ohio law, however, simply did not provide him with any grounds for objecting to the adoption. Rather than focusing on a lack of notice and hearing,

Napier's real argument, it strikes us, is with the statutes setting forth the Ohio Putative Father Registry and requiring that he have taken certain affirmative steps, by either placing his name on the registry within thirty days of the child's birth, legally acknowledging paternity, or having been adjudged the child's parent, in order to have been a necessary party to the subsequent adoption proceedings.

{¶ 14} In order to succeed on such an argument, it would be necessary for Napier to show either that the statutes simply did not apply to him or that their application violated his constitutional rights. His argument that the statutes did not apply to him is based on the holdings of *Brooks* and *Lichtenberg,* neither of which is relevant to his case. His only remaining argument, therefore, is that the statutes are themselves unconstitutional by depriving him of a substantive due-process interest in maintaining a personal relationship with his child.

{¶ 15} Before addressing the constitutional argument, however, we must first determine the applicability of R.C. 2721.12. That statute requires a party challenging a statute's constitutionality in a declaratory-judgment action to raise the claim of the statute's unconstitutionality in the complaint (or amendment thereto), and to serve the Attorney General under the applicable Rules of Civil Procedure. See, also, *Cicco v. Stockmaster* (2000), 89 Ohio St.3d 95, 728 N.E.2d 1066.

{¶ 16} In *George Shima Buick, Inc. v. Ferencak* (2001), 91 Ohio St.3d 1211, 741 N.E.2d 138, the Ohio Supreme Court held that the notice requirement of R.C. 2721.12 applies to every party who challenges a statute's constitutionality, even if the challenge is not framed as an action for a declaratory judgment under R.C. Chapter 2721, since every challenge to the constitutionality of a statute is, in essence, a request for the court to enter a declaratory judgment. *Ferencak* was followed in *Leisure v. State Farm Mut. Auto. Ins. Co.* (2000), 89 Ohio St.3d 110, 728 N.E.2d 1078. Relying upon *Ferencak* and *Leisure,* the Second Appellate District has held that the intent of the legislature was that R.C. 2721.12 apply to the original or initial pleading that sets forth a claim for relief, including a motion to set aside an adoption by a putative father. *In re Adoption of Coppersmith,* 145 Ohio App.3d 141, 2001-Ohio-1484, 761 N.E.2d 1163.

{¶ 17} The court in *Cleveland Bar Assn. v. Picklo,* 96 Ohio St.3d 195, 2002-Ohio-3995, 772 N.E.2d 1187, however, expressly overruled *Ferencak.* In *Picklo,* the court reverted to the express language of R.C. Chapter 2721, holding that the notice requirement of the statute applied only to declaratory-judgment actions filed pursuant to R.C. Chapter 2721. Currently, therefore, there is no rule of general applicability requiring a party to serve the Attorney General with notice in order to vest the trial court (and, by implication, the appeals court) with jurisdiction to declare a statute unconstitutional.

{¶ 18} There appearing to be no procedural impediment to Napier's constitutional challenge to the Ohio statutory scheme involving putative fathers, we proceed to discuss the issue on its merits.

{¶ 19} The United States Supreme Court has rejected the principle that every unwed parent has a due-process right to maintain a parental relationship with his child. *Caban v. Mohammed* (1979), 441 U.S. 380, 414, 99 S.Ct. 1760, 60 L.Ed.2d 297. As stated by the court in *Caban*, "Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." Id. at 397, 99 S.Ct. 1760, 60 L.Ed.2d 297.

{¶ 20} Further, in *Lehr v. Robertson*, supra, the court upheld a putative father registry under New York law as adequately designed to protect an "unmarried father's interest in assuming a responsible role in the future of his child," assuming that the father complied with the statute. As the court observed, under the statutory scheme, "the right to receive notice [of a proposed adoption] was * * * within [the unmarried father's] control. By mailing a postcard to the putative father registry, he could have guaranteed that he would receive notice of any proceeding to adopt * * *." Id. at 264, 103 S.Ct. 2985, 77 L.Ed.2d 614. The court also rejected any challenge to the law because it placed the onus on the unwed father to make himself aware of the registry. "The possibility that [the unwed father] may have failed to [place his name on the registry] because of his ignorance of the law cannot be a sufficient reason for criticizing the law itself." Id. at 264, 103 S.Ct. 2985, 77 L.Ed.2d 614.

{¶ 21} As the court further pointed out in *Lehr*, the legislators in New York were entitled to conclude that any other "more open-ended" alternatives to the registry requirement would "complicate the adoption process, threaten the privacy interests of unwed mothers, create the risk of unnecessary controversy, and impair the desired finality of adoption decrees." Id. Of particular importance, the court rejected the argument that the putative father was entitled to special notice, notwithstanding the statutory scheme, because the court and the mother knew of his interest in thwarting the adoption. The court stated: "This argument amounts to nothing more than an indirect attack on the notice provisions of the New York statute. The legitimate state interests in facilitating the adoption of young children and having the adoption proceeding completed expeditiously that underlie the entire statutory scheme * * * justify a trial judge's determination to require all interested parties to adhere precisely to the procedural requirements of the statute. The Constitution does not require either a trial judge or a litigant to give special notice to nonparties who are presumptively capable of asserting and protecting their own rights." Id. at 265, 103 S.Ct. 2985, 77 L.Ed.2d 614.

{¶ 22} *Lehr* did not specifically address the "constitutional adequacy" of the New York statutory scheme when the relationship between the unwed father and his child had already become what the court referred to as a "developed relationship" before the adoption. Because the putative father in that case had never had any "significant custodial, personal, or financial relationship" with his child, the court stated that it was concerned only with whether the statutory scheme unconstitutionally interfered with the potential for such a relationship. Id. at 262–263, 103 S.Ct. 2985, 77 L.Ed.2d 614.

{¶ 23} In this case, Napier, it should be pointed out, argues that before Cameron placed the child with Adoption Circle in April 2001, he visited with the child on a "weekly basis" while she was kept with the child's maternal grandmother. He has also alleged that he provided the exclusive financial support for the child and had developed a "strong emotional bond" with the child.

{¶ 24} The Supreme Court in *Lehr* did not attempt to describe what it considered a "developed relationship" between an unwed father and his child as opposed to an "inchoate interest in establishing a relationship." Napier's allegation of a developed relationship is questionable, however, given that he apparently was willing to allow the child to remain in the custody of Cameron's mother and visited her, according to his own allegation, only on a "weekly basis," which seems hardly adequate to the task of creating a strong reciprocal emotional bond with an infant. While he claims that Cameron used the deceit of "extended visitation" to conceal the fact that she had placed the child for adoption behind his back, the fact remains that the child was with the agency for several months between April and October 2001 without Napier apparently being aware of the situation.

{¶ 25} We hold, therefore, that even if Napier's allegations of his financial support and weekly visitations with his infant son are accepted, such a relationship could not be considered a "developed relationship" for the purposes of distinguishing *Lehr*. Rather, we hold that the interest he is seeking to protect is the opportunity to develop such a relationship, and the United States Supreme Court has held that a statutory scheme incorporating a putative father registry, such as that existing in Ohio, is constitutionally adequate to protect such an inchoate interest.

{¶ 26} Accordingly, finding no constitutional infirmity in the Ohio statutory scheme, and based upon the holding of *Lehr*, we hold that the order of trial court refusing to set aside the adoption did not violate Napier's procedural or substantive rights. We note further that, even if he had been successful in setting aside the adoption, Napier would still have needed to find some way to challenge the order of the juvenile court that terminated parental rights and granted Adoption Circle permanent custody of the child. As noted, that order has never been appealed.

{¶ 27} Accordingly, Napier's two assignments are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

HILDEBRANDT, P.J., and PAINTER, J., concur.