OPINION
{¶ 1} Appellant-Father John Rokosky appeals the decision of the Stark County Court of Common Pleas, Probate Division, which granted Appellee's petition for adoption of Hannah Lee Osoro.
 {¶ 2} This appeal is expedited and is being considered pursuant to App. R. 11.2(C). The relevant facts leading to this appeal are as follows:
 STATEMENT OF THE FACTS AND CASE {¶ 3} Julie Rokosky and Appellant John Rokosky were married on May 1, 1993. Two children were born as issue of that marriage. (T. at 2). By Judgment Entry filed December 31, 2003, in the Ashtabula County Domestic Relations Court, the couple was divorced and Julie Rokosky was awarded custody of their two children. Appellant was ordered to pay child support for the children. (T. at 3).
 {¶ 4} Shortly after the divorce, in either February or March of 2004, the couple reconciled and resumed living together in Ashtabula County. (T. at 3). This relationship continued for approximately two and a half years, with the couple separating and Appellant moving out and moving to Toledo on July 7, 2006. (T. at 3, 24, 32). During the time that the couple were living together, Julie Rokosky became pregnant.
 {¶ 5} On December 13, 2006, Julie Rokosky gave birth to a little girl, who was named Hannah.
 {¶ 6} On December 14, 2006, Julie Rokosky executed an Agreement for Temporary Custody of Child in favor of Adoption Circle, an adoption agency located in Columbus, Ohio. The child was then placed with Daniel and Jodie Osoro, her current adoptive parents. *Page 3 
 {¶ 7} Adoption Circle filed a Complaint for Finding of Dependency in Franklin County, Domestic Relations Division, Case No. 07JU 01 00602.
 {¶ 8} On February 7, 2007, a hearing was held in the Franklin County Division of Domestic Relations. Appellant appeared at that hearing. At that time, Adoption Circle dismissed its Complaint.
 {¶ 9} On March 16, 2007, an Application for Placement was filed by Julie Rokosky with the Stark County Probate Court. (Case No. 199552).
 {¶ 10} On April 23, 2007, a hearing commenced on the application. At said hearing, the court continued the application for placement and ordered the parties to undergo genetic testing to determine Appellant's legal status.
 {¶ 11} On June 8, 2007, Daniel and Jodie Osoro filed a Petition for Adoption of Minor in the Stark County Probate Court, Case No. 200343, contemporaneous with a Notice of Placement Agreement, a Permanent Surrender of Child, and a Consent to Adoption filed by Community Services of Stark County, Inc.
 {¶ 12} On June 12, 2007, the Application for Placement in Case No. 199552 was withdrawn.
 {¶ 13} On June 28, 2007, Appellant filed a Paternity Complaint in the Juvenile Court in Ashtabula County, Case No. 07J1172.
 {¶ 14} On November 27, 2007, the Ashtabula Juvenile Court dismissed Appellant's paternity action stating that the "proper forum for his objections is the Stark County Probate Court where the record indicates that the adoption of the child in question was finalized in Case No. 200343."
 {¶ 15} Appellant did not appeal the trial court's dismissal of his paternity action. *Page 4 
 {¶ 16} On December 4, 2007, Appellant filed a Notice of Interest in Stark County Case No. 200343, requesting that he be made a party to the proceeding and objecting to the placement and/or adoption of the child.
 {¶ 17} A pre-trial was held in this matter wherein the trial court ordered counsel to submit briefs by January 7, 2008, on the issue of whether John Rokosky's consent was necessary for the adoption,
 {¶ 18} On April 28, 2008, the Probate Court held an evidentiary hearing with regard to Appellant John Rokosky's relationship in the adoption proceedings.
 {¶ 19} At said hearing, Appellant testified he did not learn that Julie Rokosky was pregnant until after the couple separated in July, 2006, and that she told him her due date was February 7, 2007. (T. at 4-5, 15, 44). Appellant stated that prior to July, 2006, he and Julie never discussed abortion or adoption. He stated that in either July or August, he had a conversation with Julie about the possibility of her having an abortion. (T. at 44).
 {¶ 20} He stated that his father called him on December 13, 2006, and told him that his child had been born. (T. at 5). He stated that he contacted an attorney in Toledo to discuss his legal rights on either December 13th or 14th. (T. at 6, 20).
 {¶ 21} Julie Rokosky testified that Appellant knew of the pregnancy as early as April. (T. at 23). She testified that she took two home pregnancy tests around the middle of April. (T. at 24). She stated that she first saw a doctor on July 19, 2006, and that her due date was determined to be January, 2007. (T. at 23, 34-35). She further testified that she and Appellant discussed the possibility of adoption or abortion during the months of May and June. (T. at 23, 24). She stated that they went so far as to *Page 5 
consider her cousin who lived in Seattle as a possible adoptive mother for the child. (T. at 24, 33). She testified that she met the adoptive parents during the third week of October and that she told Appellant that she felt that they were perfect because the adoptive father was "into computers" like Appellant. (T. at 33).
 {¶ 22} Both parties testified that John Rokosky gave Julie Rokosky approximately $480.00 towards the rent for July, 2006. (T. at 4, 25). After that one-time payment, John Rokosky provided no other financial support for Julie Rokosky during the pregnancy. (T. at 17.)
 {¶ 23} On May 12, 2008, Julie Rokosky and John Rokosky both separately filed proposed Findings of Fact and Conclusions of Law.
 {¶ 24} On June 30, 2007, the Probate Court filed Findings of Fact and Conclusions of Law wherein the court determined that Appellant was a "putative father", that his consent was not necessary in these proceedings due to his failure to file with the putative father registry, and that such finding complied with Due Process.
 {¶ 25} Appellant timely filed a notice of appeal and herein raises the following Assignment of Error:
 ASSIGNMENT OF ERROR {¶ 26} "I. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT HAD FAILED WITHOUT JUSTIFIABLE CAUSE TO COMMUNICATE WITH THE CHILD FOR A PERIOD OF ONE YEAR PRECEDING THE FILING OF THE PETITION FOR STEPPARENT ADOPTION." *Page 6 
 I. {¶ 27} In his sole assignment of error, Appellant argues that the trial court erred in determining that his consent was not required for the adoption in the instant case to be approved. We disagree.
 {¶ 28} An appellate court will not disturb a trial court's decision on adoption unless it is against the manifest weight of the evidence.In re Adoption of Masa (1986), 23 Ohio St.3d 163. A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v.Foley Construction Co. (1978), 54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson, 66 Ohio St.3d 610,1993-Ohio-9.
 {¶ 29} In the case sub judice, Appellant is Hannah's putative father. As the child's putative father, R.C. § 3107.061 applies to his status. It states:
 {¶ 30} "A man who has sexual intercourse with a woman is on notice that if a child is born as a result and the man is the putative father, the child may be adopted without his consent pursuant to division (B) of section 3107.07 of the Revised Code."
 {¶ 31} R.C. § 3107.07(B) provides that a putative father's consent to the adoption of a child is not necessary if the putative father fails to register as the minor's putative father with Ohio's putative father registry not later than 30 days after the minor's birth.
 {¶ 32} It is undisputed that Appellant did not register with the putative father registry. *Page 7 
 {¶ 33} Appellant argues, however, that in this case, a strict application of the statute is unconstitutional as applied to him and that such application denied him his procedural and substantive due process rights.
 {¶ 34} The United States Supreme Court has rejected the principle that every unwed parent has a due-process right to maintain a parental relationship with his child. Caban v. Mohammed (1979), 441 U.S. 380. As stated by the Supreme Court in Caban:
 {¶ 35} "Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." Id. at 397.
 {¶ 36} Further, in Lehr v. Robertson (1983), 463 U.S. 248, the court upheld a putative father registry under New York law as adequately designed to protect an "unmarried father's interest in assuming a responsible role in the future of his child," assuming that the father complied with the statute. In Lehr, the court found:
 {¶ 37} "[T]he right to receive notice [of a proposed adoption] was * * * within [the unmarried father's] control. By mailing a postcard to the putative father registry, he could have guaranteed that he would receive notice of any proceeding to adopt * * *." Id. at 264.
 {¶ 38} The Lehr court also rejected any challenge to the law because it placed the onus on the unwed father to make himself aware of the registry, stating:
 {¶ 39} "The possibility that [the unwed father] may have failed to [place his name on the registry] because of his ignorance of the law cannot be a sufficient reason for criticizing the law itself." Id. at 264.
 {¶ 40} As the court further pointed out in Lehr, the legislators in New York were entitled to conclude that any other "more open-ended" alternatives to the registry *Page 8 
requirement would "complicate the adoption process, threaten the privacy interests of unwed mothers, create the risk of unnecessary controversy, and impair the desired finality of adoption decrees." Id.
 {¶ 41} Of particular importance, the court in Lehr rejected the argument that the putative father was entitled to special notice, notwithstanding the statutory scheme, because the court and the mother knew of his interest in thwarting the adoption. The court stated:
 {¶ 42} "This argument amounts to nothing more than an indirect attack on the notice provisions of the New York statute. The legitimate state interests in facilitating the adoption of young children and having the adoption proceeding completed expeditiously that underlie the entire statutory scheme * * * justify a trial judge's determination to require all interested parties to adhere precisely to the procedural requirements of the statute. The Constitution does not require either a trial judge or a litigant to give special notice to nonparties who are presumptively capable of asserting and protecting their own rights." Id. at 265.
 {¶ 43} Lehr did not specifically address the "constitutional adequacy" of the New York statutory scheme when the relationship between the unwed father and his child had already become what the court referred to as a "developed relationship" before the adoption. Because the putative father in that case had never had any "significant custodial, personal, or financial relationship" with his child, the court stated that it was concerned only with whether the statutory scheme unconstitutionally interfered with the potential for such a relationship. Id. at 262-263,103 S.Ct. 2985, 77 L.Ed.2d 614. *Page 9 
 {¶ 44} In the case sub judice, Appellant argues that he attempted to establish a parent-child bond through his challenges to the adoption proceedings herein.
 {¶ 45} The Supreme Court in Lehr did not attempt to describe what it considered a "developed relationship" between an unwed father and his child as opposed to an "inchoate interest in establishing a relationship." Appellant's allegation of a developed relationship in this case is untenable for the purposes of distinguishing Lehr given that he has never seen the child. Rather, we hold that the interest he is seeking to protect is the opportunity to develop such a relationship, and the United States Supreme Court has held that a statutory scheme incorporating a putative father registry, such as that existing in Ohio, is constitutionally adequate to protect such an inchoate interest.
 {¶ 46} Accordingly, finding no constitutional infirmity in the Ohio statutory scheme, and based upon the holding of Lehr, we hold that the trial court did not err in finding that Appellant's consent to the adoption was not required and that such did not violate Appellant's procedural or substantive rights. *Page 10 
 {¶ 47} Appellant's sole assignment of error is overruled.
 {¶ 48} For the foregoing reasons, the judgment of the Court of Common Pleas, Probate Division, Stark County, Ohio, is hereby affirmed.
 By: Wise, J. Gwin, P. J., and Farmer, J., concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Probate Division, Stark County, Ohio, is affirmed.
 Costs assessed to Appellant. *Page 1