[Cite as *In re H.N.R.*, 2014-Ohio-4959.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

IN THE MATTER OF THE ADOPTION OF: H.N.R.


Appellate Case No.     2014-CA-35

Trial Court Case No.   10384AD-14-14


(Appeal from Probate Court)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 7th day of November, 2014.

. . . . . . . . . . .

ERIK SMITH, Atty. Reg. No. 0089330, 2562 Glen Echo Drive, Columbus, Ohio 43202
     Attorney for Appellant - C.S.M.

MICHAEL VOORHEES, Atty. Reg. No. 0039293, 11159 Kenwood Road, Cincinnati, Ohio 45242
     Attorney for Appellees - D.R. and M.R.

ADOPTION LINK, INC., 512 Dayton Street, Yellow Springs, Ohio 45387
     Appellee

N.A.B.
     Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, we are asked to decide if the thirty-day post-birth registration deadline of the putative father registry under R.C. 3107.07(B)(1) is unconstitutional as applied to Appellant. We find that it is not, and affirm the trial court judgment.

### I. Facts and Course of Proceedings

{¶ 2} The subject of this appeal is the adoption of H.N.R., who was born on August 29, 2013. Appellant, C.S.M., and the birth-mother, N.A.B., were involved in a romantic relationship for about a year, but never married. N.A.B. became pregnant a few months into the relationship. At the time of the child's birth, C.S.M. was living with the birth-mother and was present at the birth. However, no father was named on the original birth certificate.

{¶ 3} C.S.M. is probably H.N.R.'s biological father. On September 17, 2013, C.S.M. and N.A.B. participated in a DNA test. The report of the test indicates a 99.99% likelihood that C.S.M. is H.N.R.'s biological father.

{¶ 4} During the first few months of the child's life, C.S.M. watched and held the child at least every couple of weeks. He believed that the paternity test established his parentage and was not aware of the Ohio Putative Father Registry (PFR) and its requirements. C.S.M. relied upon N.A.B.'s representations that they would some day marry and raise the child together. Accordingly, C.S.M. did not register with the PFR, nor did he initiate any court or administrative proceedings to establish legal fatherhood at that time.

{¶ 5} When H.N.R. was about four months old, the birth-mother began avoiding

C.S.M. and their relationship deteriorated. After she left him a voice message indicating that the child had died, C.S.M. called the sheriff's department and asked for an investigation.

{¶ 6} Subsequently, C.S.M. learned that N.A.B. had surrendered the child for adoption on January 18, 2014. On that date, Adoption Link, Inc. a private adoption agency, filed a notice with the Greene County Juvenile Court pursuant to R.C. 5103.15, indicating that the child had been surrendered for adoption. The child was then placed with the eventual adoptive parents.[1] On February 11, 2014, the adoptive parents filed an adoption petition in Greene County Probate Court. At the time, the child was five and half months old.

{¶ 7} Almost a month later, on April 8, 1014, C.S.M. filed a custody motion in the Lawrence County, Ohio, Juvenile Court. On April 17, 2014, that court notified Greene County Probate Court of its pending action. Subsequently, on April 25, 2014, C.S.M. moved to intervene in the adoption proceeding in Greene County Probate Court, and the probate court ordered a stay of the proceedings. The petitioners for adoption then filed motions contesting the stay and opposing C.S.M.'s motion to intervene in the probate court proceedings.

{¶ 8} On May 7, 2014, C.S.M. filed a motion to stay the adoption proceedings in the Greene County Probate Court. However, the court considered this motion moot in light of its prior stay order. On June 9, 2014, C.S.M. also filed a motion in Greene County Juvenile Court, seeking to set aside the permanent surrender of custody, seeking temporary custody, and applying

---

[1] In such situations, the juvenile court is not required either to approve the surrender or do anything more than journalize the notification documents that have been filed. *See In re E.B.*, 9th Dist. Summit No. 23850, 2008-Ohio-784, ¶ 15 (holding that a juvenile court lacks jurisdiction to hear challenges to validity of consent to adoption in cases where custody of children less than six months old has been surrendered to private agencies pursuant to R.C. 5103.15(B)(2)). *Accord In re T.J.B.*, 1st Dist. Hamilton No. C-130725, 2014-Ohio-2028, ¶ 11-15. This is the procedure used in the case before us.

to establish parentage of the child.

{¶ 9}     The Greene County Probate Court held a hearing on June 24, 2014, to resolve the pending motions.   At the hearing, C.S.M. testified, and the trial court found him to be a credible witness.   After considering post-hearing memoranda, the court found that C.S.M.'s consent to the adoption was not required because he failed to establish parentage via the PFR within 30 days of the child's birth, and did not initiate paternity proceedings prior to the time the adoption petition was filed.   The trial court also found that C.S.M. failed to take appropriate steps to prove the authenticity and accuracy of the DNA test, and did not initiate any court or administrative proceedings to formally establish his parentage of H.N.R. until after Petitioners filed their petition to adopt the child.

{¶ 10}     C.S.M. appeals the trial court order finding that his consent to adoption was not required.

## II.   First Assignment of Error

{¶ 11}     C.S.M.'s First Assignment of Error is as follows:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO INTERVENE FOR FAILING TO FILE TIMELY IN THE PUTATIVE FATHER REGISTRY BECAUSE THE STATE HAS SHIRKED ITS DUTY TO PROMOTE AWARENESS OF THE REGISTRY.

{¶ 12}     As will be discussed in detail below, Ohio's adoption statutes require an unwed father who has not established paternity of a child to file with the PFR within thirty days of the child's birth in order to have a right to participate in an adoption proceeding.   According to

C.S.M., the State of Ohio has an affirmative duty under R.C. 3107.065(B) to "establish a campaign to promote awareness" of the PFR, but failed to adequately satisfy this duty. However, C.S.M. did not raise this issue in the trial court, nor did he provide the trial court with any evidence pertaining to this assignment of error. Since the issue was not properly preserved, this assignment of error has been waived and is overruled. *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986).

{¶ 13}   C.S.M. contends that the waiver doctrine is discretionary and that the parental interests involved in this case warrant consideration of his assignment of error. C.S.M. additionally argues that his trial counsel lacked a full opportunity to raise this issue.

{¶ 14}   After reviewing the record, we disagree with the latter contention. The trial court gave counsel a full opportunity to raise any issues necessary. *See* Transcript of June 24, 2014 Hearing, p. 5. The only reservation noted by the court was that it would hold a further hearing so that the adoptive parents could present testimony to rebut C.S.M.'s testimony about his relationship with the child, if it became necessary to consider C.S.M.'s testimony. *Id*. at p. 55. However, the need for a further hearing never arose, because the court concluded that even though C.S.M.'s testimony appeared to be credible, his testimony was irrelevant to resolution of the legal issues in the case. Doc. #31, p. 3.

{¶ 15}   We also reject C.S.M.'s reliance on the importance of parental interests. We acknowledge that parental rights are extremely important. *See, e.g., In re Adoption of J.M.N.*, 2d Dist. Clark Nos. 08-CA-23, 08-CA-24, 2008-Ohio-4394, ¶ 7. However, the requirement of registering with the PFR within thirty days after birth in order to receive notice of a petition to adopt has been in effect since 1996. *See* H.B. No. 274, Section 1, 1996 Ohio Laws 143

(amending R.C. 3107.062). Likewise, the requirement to promote awareness of the PFR has been in effect since 1996. *See* H.B. No. 419, Section 1, 1996 Ohio Laws 132 (enacting R.C. 3107.065). C.S.M.'s counsel, therefore, should have been aware of the requirement and could have raised it at the trial court level. Under the circumstances, we see no reason to depart from the waiver doctrine.

{¶ 16} Accordingly, the First Assignment of Error is overruled.

### III. Second Assignment of Error

{¶ 17} C.S.M.'s Second Assignment of Error states that:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO INTERVENE FOR FAILING TO FILE TIMELY IN THE PUTATIVE FATHER REGISTRY BECAUSE THE 30-DAY POST-BIRTH DEADLINE FOR DOING SO UNDER R.C. 3107.07(B)(1) IS UNCONSTITUTIONAL AS APPLIED TO HIM UNDER ARTICLE I, SECTION 16 OF THE OHO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

{¶ 18} Under this assignment of error, C.S.M. contends that Ohio's statutory scheme for registration of putative fathers violates due process because it omits many responsible fathers who are distracted in their child's first month of life and do not realize that they need to register. C.S.M. further contends that the statutory scheme is unconstitutional as applied to him because his child was not placed for adoption until five months after her birth. According to C.S.M., he should have been given an opportunity to register any time before a surrender or adoption petition was filed, without resorting to more costly adversarial procedures that would establish

his parental rights.

{¶ 19} In response to this assignment of error, Appellees claim that we lack jurisdiction to decide the constitutionality of R.C. 3107.07(B)(1) because C.S.M. failed to provide notice of his constitutional claim to the Ohio Attorney General, pursuant to R.C. 2721.12. However, the Supreme Court of Ohio has held that such notice is required only in declaratory judgment actions. *Cleveland Bar Assn. v. Picklo*, 96 Ohio St. 3d 195, 2002-Ohio-3995, 772 N.E.2d 1187, ¶ 6-7; *State v. Chapple,* 175 Ohio App.3d 658, 2008-Ohio-1157, 888 N.E.2d 1121, ¶ 14, fn. 2 (2d Dist.); and *State v. Watkins*, 2d Dist. Greene No. 2008 CA 41, 2009-Ohio-3043, ¶ 13, fn.1. The First District Court of Appeals has also specifically held that the notice requirement of R.C. 2721.12 does not apply to a constitutional challenge to an adoption proceeding. *In re Cameron*, 153 Ohio App.3d 687, 2003-Ohio-4304, 795 N.E.2d 707, ¶ 17-18 (1st Dist.).

{¶ 20} Furthermore, we conclude that the Probate Court had jurisdiction to decide the adoption proceeding notwithstanding the subsequent filing of parentage actions in Lawrence and Greene Counties. The trial court properly distinguished *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, and *In re Adoption of G.V.*, 126 Ohio St. 3d 249, 2010-Ohio-3349, 933 N.E.2d 245. Those cases set forth the general rule that "[w]hen an issue concerning parenting of a minor is pending in the juvenile court, a probate court must refrain from proceeding with the adoption of that child." *Pushcar* at syllabus. In this regard, the Supreme Court of Ohio has held that a probate court must refrain from proceeding with an adoption pending the outcome of a parentage case in the juvenile court and must refrain from ruling on the adoption until the adjudication of parentage is completed. *Id.* at ¶ 8. *See also In re Adoption of P.A.C.*, 126 Ohio St. 3d 236, 2010-Ohio-3351, 933 N.E.2d 236, ¶ 1. However,

all of these cases involve situations where the parentage actions were filed prior to the adoption proceeding.

{¶ 21}    In the case before us, the Greene County Probate Court had jurisdiction to decide the adoption proceeding because the adoption proceeding was filed prior to the parentage action in either juvenile court.   Under the jurisdictional priority rule, " ' "[a]s between [state] courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties." ' "   *State ex rel. Otten v. Henderson*, 129 Ohio St.3d 453, 2011-Ohio-4082, 953 N.E.2d 809, ¶ 24, quoting *State ex rel. Racing Guild of Ohio v. Morgan*, 17 Ohio St.3d 54, 56, 476 N.E.2d 1060 (1985).   (Other citation omitted.) This rule applies "even when the causes of action are not the same if the suits present part of the same 'whole issue.' " (Citations omitted.)   *Otten* at ¶ 29.

{¶ 22}    In concluding that it had jurisdiction to decide the case, the probate court relied upon *In re Adoption of Asente*, 90 Ohio St. 3d 91, 734 N.E.2d 1224 (2000).   Notably, *Pushcar* relied on *Asente*, and *G.V.* relied on *Pushcar's* interpretation of *Asente*.   *See Pushcar* at ¶ 10-11, and *G.V.* at   ¶ 1 and 8.    With respect to jurisdictional disputes, the *Asente* court stressed that:

> One common thread runs through every statute, every court opinion, and every learned treatise on this matter.   That common thread is built on the bedrock proposition that once a court of competent jurisdiction has begun the task of deciding the long-term fate of a child, all other courts are to refrain from exercising jurisdiction over that matter.

*Asente* at 92.

{¶ 23}    Although the Supreme court in *Pushcar* and *G.V.* stated that when an issue concerning the parenting of a minor is *pending in the juvenile court*, a probate court must refrain from proceeding with the adoption of that child, this language must be read in light of the facts of those cases and recognition that the first court acquiring jurisdiction has proper authority and jurisdiction to determine the issues in the case.   In the case before us, the Greene County Probate Court was the first court to acquire jurisdiction of the matter, and that court had jurisdiction to determine the issues in the case.   As was stressed in fn. 1, infra, the Greene County Juvenile Court did not previously obtain jurisdiction over the case; it simply served as a place where a notification of surrender of custody was filed.

{¶ 24}    As was noted, C.S.M. also claims that R.C.3107.07(B)(1) is unconstitutional as applied to him.   This statute provides that:

> Consent to adoption is not required of any of the following:
>
> * * *
>
> (B) The putative father of a minor if either of the following applies:
>
> (1) The putative father fails to register as the minor's putative father with the putative father registry established under section 3107.062 of the Revised Code not later than thirty days after the minor's birth * * *.

{¶ 25}    According to C.S.M., R.C. 3107.07(B)(1) violates his substantive due process rights because, prior to commencement of the adoption proceeding, he had established a "developed relationship" with the child.   In this regard, C.S.M. relies on *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed 2d 614 (1983).

{¶ 26}    In *Lehr,* the Supreme Court of the United States found that the State of New

York putative father registry was constitutional, because it was "adequately designed to protect an 'unmarried father's interest in assuming a responsible role in the future of his child,' assuming that the father complied with the statute." *In re Cameron*, 153 Ohio App.3d 687, 693, 2003-Ohio-4304, 795 N.E.2d 707, ¶ 20 (1st Dist.), quoting *Lehr* at 264. However, "*Lehr* did not specifically address the 'constitutional adequacy' of the New York statutory scheme when the relationship between the unwed father and his child had already become what the court referred to as a 'developed relationship' before the adoption" as opposed to an " 'inchoate interest in establishing a relationship.' " *Cameron* at ¶ 22 and 24. Because the putative father in *Lehr* "never had any 'significant custodial, personal, or financial relationship' with his child, the court stated that it was concerned only with whether the statutory scheme unconstitutionally interfered with the potential for such a relationship." *Id.* at ¶ 22, quoting *Lehr* at 262-263.

{¶ 27} However, in *Cameron*, the First District Court of Appeals applied R.C. 3107.07(B)(1) and *Lehr* to facts similar to those present here and found no substantive due process violation. The court of appeals noted that the putative father had claimed that the birth-mother used the "deceit of 'extended visitation' to conceal the fact that she had placed the child for adoption" behind the father's back. *Id.* at ¶ 24. Nonetheless, the court found that the putative father's weekly visits to the child were "hardly adequate to the task of creating a strong bond with the infant." *Id.* The facts presented here by C.S.M. are even less compelling.

{¶ 28} In finding no constitutional infirmity in the Ohio statutory scheme and no violation of the putative father's procedural or substantive due process rights, the First District Court of Appeals stated that:

We hold, therefore, that even if [the putative father's] allegations of his

financial support and weekly visitations with his infant son are accepted, such a relationship could not be considered a "developed relationship" for the purposes of distinguishing *Lehr*. Rather, we hold that the interest he is seeking to protect is the opportunity to develop such a relationship, and the United States Supreme Court has held that a statutory scheme incorporating a putative father registry, such as that existing in Ohio, is constitutionally adequate to protect such an inchoate interest.

*Cameron* at ¶ 25. *Accord In re Adoption of Oroso*, 5th Dist. Stark No. 2008 CA 00163, 2008-Ohio-6925, ¶ 45.

{¶ 29} As a further matter, we note that even if R.C. 3107.07(B)(1) were interpreted in the manner C.S.M. suggests, it would not aid him. As was noted, C.S.M. suggests that putative fathers should be permitted to register at any time before adoptive proceedings are commenced, even if registration occurs after the thirty-day period. However, the petition for adoption in this case was filed prior to the time that C.S.M. initiated any action to protect his rights.

{¶ 30} Accordingly, we overrule the Second Assignment of Error and affirm the trial court judgment.

. . . . . . . . . . . . .

FROELICH, P.J. and HALL, J., concur.

Copies mailed to:

Erik Smith
Michael Voorhees
Adoption Link, Inc.
N.A.B.
Hon. Thomas M. O'Diam