[Cite as *In re Adoption of Z.G.A.*, 2016-Ohio-238.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

IN THE MATTER OF THE ADOPTION
OF:  Z.G.A.

:
:
:       C.A. CASE NO.   2015-CA-51
:
:       T.C. NO. 10524AD-15-50
:
:       (Civil Appeal from Common Pleas
:        Court, Probate Division)
:
:
. . . . . . . . . .

**O P I N I O N**

Rendered on the ___22nd___ day of ____January____, 2016.

. . . . . . . . . .

J.M., North Central Correctional Institute, 670 Marion-Williamsport Road, P. O. Box 1812, Marion, Ohio 43301
        Appellant

MICHAEL R. VOORHEES, Atty. Reg. No. 0039293, 11159 Kenwood Road, Cincinnati, Ohio 45242
        Attorney for Appellees

. . . . . . . . . . . .

FROELICH, P.J.

{¶ 1} Appellant J.M. appeals from a judgment of the Greene County Court of Common Pleas, Probate Division, which denied his request to intervene in the then-pending adoption of Z.G.A, finding that Appellant's consent to the adoption was not required because he had not registered as the putative father of the child or otherwise

established his paternity.

{¶ 2} We glean the following facts from the parties' briefs and attachments, because many of the documents on which they are based are not contained in the trial court's record.

{¶ 3} Appellant was incarcerated several months before Z.G.A.'s birth, and he remains incarcerated. Z.G.A. was born in Delaware County, Ohio, on February 24, 2015. No father was listed on her birth certificate, and the nature of the relationship between Appellant and Mother is unclear from the record. Three days after Z.G.A.'s birth, Mother surrendered her to an adoption agency.

{¶ 4} On February 20, 2015, prior to Z.G.A.'s birth, Appellant filed a motion in the Delaware County Probate Court to stay any adoption proceedings pending in that court. On February 23, 2015, the court filed a judgment entry stating that it lacked jurisdiction to grant the relief Appellant sought, because no adoption proceedings had been filed in Delaware County.

{¶ 5} On March 16, 2015, approximately three weeks after Z.G.A.'s birth, Appellant filed a "Motion for Consideration" in the Delaware County Probate Court, in which he again sought to prevent the finalization of any adoption proceedings requested by Mother until he had an opportunity to establish paternity. On March 17, the Delaware County Probate Court again found that it lacked jurisdiction because no petition of adoption had been filed there, and it denied the motion. The court directed Appellant to contact the Ohio Department of Job and Family Services to place his name on the putative father registry, noting that Appellant only had a 30-day window to do so. The court also attached the ODJFS Putative Father Registry form to its order.

{¶ 6} Appellant mailed a "Motion for Consideration" to the Franklin County Probate Court. This document was purportedly signed by Appellant on March, 15, 2015, but it was not received by the court until April 22. A probate magistrate responded by letter dated May 4, 2015, indicating that the court lacked jurisdiction because no adoption proceedings were pending in Franklin County and suggesting that Appellant contact the Franklin County Juvenile Court. The Clerk of Courts also responded to Appellant, indicating that the document could not be filed and that Appellant should contact the probate court regarding adoptions.

{¶ 7} Appellant tried to register with the Putative Father Registry in early April 2015. The registration form was purportedly signed on March 25, 2015, and was stamped as received at ODJFS on April 1, 2015.[1] The registration form was rejected by ODJFS by a letter to Appellant dated April 2, 2015, because the form had not been filed within 30 days of the child's birth.

{¶ 8} A petition for Z.G.A.'s adoption was filed in Greene County on April 14, 2015. The record does not indicate that any notice of the filing was sent to Appellant, and we assume that none was, because he was not identified on any of the documents filed with the court.

{¶ 9} On April 21, 2015, Appellant sent letters to a hospital in Delaware County, Ohio, where the child was allegedly born, and to Adoption Link, Inc., in Yellow Springs, Ohio. The letters stated that he was the "natural father" of Z.G.A., informed that he was petitioning a court in Franklin County, Ohio, for DNA testing, and requested all records

---

[1]Appellant attached hand-written and typed copies of this form to his brief. Only the hand-written form is signed by Appellant and stamped by the ODJFS. It is unclear who prepared the other form and for what purpose.

pertaining to custody of Z.G.A. The hospital responded to Appellant stating that, because Mother did not document him as the father and no paternity affidavit was completed, it could not provide him with the requested records. It is unclear whether Adoption Link responded to the letter in any way.

{¶ 10} On July 23, 2015, Appellant filed a "Request for Paternity/Genetic Testing Establishing Paternal Rights as the Natural Father" in the Greene County Probate Court ("the trial court").[2] The same day, the trial court filed a judgment entry stating that it would treat this filing "as an objection contesting the adoption and whether the alleged father's consent is required." The trial court gave the prospective adoptive parents 14 days to respond. On July 31, the trial court denied Appellant's request to intervene in the pending adoption. The court found that his consent was not required because he had not registered as the putative father within 30 days of the child's birth, as required by R.C. 3107.07(B)(1), or otherwise established his paternity in a manner that would require his consent to the adoption. *See* R.C. 3107.06(B). The record indicates that nothing else was filed related to this issue before the notice of appeal. The adoption was finalized on September 1, 2015.

{¶ 11} Appellant appeals from the trial court's judgment denying his request to intervene and finding that his consent to the adoption was unnecessary. Appellant's three assignments of error assert that his due process or equal protection rights were violated in that he did not receive notice of the adoption proceedings and was not permitted to intervene in those proceedings. We will address these assignments

---

[2]Appellant's filing was directed to the Xenia Municipal Court, but it was file-stamped by the Probate Court.

together.

{¶ 12} "A parent has a fundamental right to care for and have custody of his or her child." *In re Adoption of E.E.R.K.*, 2d Dist. Miami No. 2013 CA 35, 2014-Ohio-1276, ¶ 16; *In re K. C.,* 2d Dist. Montgomery No. 22243, 2008-Ohio-2593, ¶ 10. Those rights are terminated when a child is adopted.

{¶ 13} Under Ohio law, a "putative father" is a man, including one under the age eighteen, who may be a child's father and to whom all of the following apply: 1) he was not married to the child's mother at the time of the child's conception or birth; 2) he has not adopted the child; 3) he has not been determined to have a parent and child relationship with the child by a court or administrative proceeding that occurred prior to the date a petition to adopt the child is filed; and 4) he has not acknowledged paternity of the child pursuant to R.C. 3111.21 - R.C. 3111.35. Appellant is a putative father of Z.G.A.

{¶ 14} In 1996, Ohio established a Putative Father Registry; if a man registers as the putative father of a child, he will receive notice, at the address or telephone number he provides, of any petition that may be filed to adopt a minor he claims as his child. R.C. 3107.062. At the time of Z.G.A.'s birth, a putative father was required to register "before or not later than thirty days after the birth of the child" for the purpose of preserving the requirement of his consent to an adoption. R.C. 3107.062. [3]

{¶ 15} R.C. 3107.06 and R.C. 3107.07 set forth the consents required and not required for the adoption of a child in Ohio.

---

[3] Effective March 23, 2015, Sub. S.B. 250 amended R.C. 3107.07 to shorten this timeframe to 15 days.

**{¶ 16}** Pursuant to R.C. 3107.06, unless consent is not required under R.C. 3107.07, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by all of the following:

(A) The mother of the minor;

(B) The father of the minor, if any of the following apply:

(1) The minor was conceived or born while the father was married to the mother;

(2) The minor is his child by adoption;

(3) Prior to the date the petition was filed, it was determined by a court proceeding * * * [or] an administrative proceeding * * * [in this state or another state] that he has a parent and child relationship with the minor;

(4) He acknowledged paternity of the child and that acknowledgment has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code.

(C) The putative father of the minor;

(D) Any person or agency having permanent custody of the minor or authorized by court order to consent;

(E) The minor, if more than twelve years of age, unless the court, finding that it is in the best interest of the minor, determines that the minor's consent is not required.

**{¶ 17}** R.C. 3107.07(B) provides that the consent of a putative father is *not* required if any of the following apply:

(1) The putative father fails to register as the minor's putative father

with the putative father registry established under section 3107.062 of the Revised Code not later than thirty days after the minor's birth;

(2) The court finds, after proper service of notice and hearing, that any of the following are the case:

(a) The putative father is not the father of the minor;

(b) The putative father has willfully abandoned or failed to care for and support the minor;

(c) The putative father has willfully abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor, or the minor's placement in the home of the petitioner, whichever occurs first.

**{¶ 18}** It is undisputed in this case that Father did not register as Z.G.A.'s putative father within 30 days of her birth and that his parental relationship had not been legally established in any other way before the petition for adoption was filed. He asserts that the process by which a child can be adopted without notice to the unregistered putative father violates his due process or equal protection rights.

**{¶ 19}** Ohio has long recognized that a parent's right "to the care and custody of his children is one of the most precious and fundamental in law" and that the permanent termination of parental rights is "the family law equivalent of the death penalty in a criminal case." *In re Adoption of Masa*, 23 Ohio St.3d 163, 164, 492 N.E.2d 140 (1986), citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 19, citing *In re Smith,* 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). *See also In re Adoption of P.A.C.,*

126 Ohio St.3d 236, 2010-Ohio-3351, 933 N.E.2d 236, ¶ 5.  In cases involving the termination of parental rights, parents "must be afforded every procedural and substantive protection the law allows."  *In re B.C.,* citing *In re Hayes,* 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997).

{¶ 20}  However, the Supreme Court of Ohio has observed that a putative father's "inchoate interest in developing a relationship with [a child] in the future[,] * * * arising solely from a biological link with the child, is afforded far less constitutional protection than an already developed parent-child relationship would be."  *In re Adoption of H.N.R.,* Slip Opinion No. 2015-Ohio-5476, ¶ 26 (Dec. 31, 2015).[4]  Moreover, under Ohio's statutory scheme, putative fathers need not have notice of a birth or even of a pregnancy to have their rights foreclosed.  "A man who has sexual intercourse with a woman is on notice that if a child is born as a result and the man is the putative father, the child may be adopted without his consent pursuant to division (B) of section 3107.07 of the Revised Code."  R.C. 3107.061.

{¶ 21} The U.S. Supreme Court has "sanctioned the use of putative-father registries as mechanisms to facilitate the adoption process," and the Supreme Court of Ohio has also adopted this view.  *In re Adoption of P.A.C.,* 126 Ohio St.3d 236, 2010-Ohio-3351, 933 N.E.2d 236, ¶ 57, citing *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).  *Lehr* held that a putative father registry was constitutional where the father had never had any significant custodial, personal, or financial relationship with the child, because it was "adequately designed" to protect an unmarried father's interest

---

[4]A motion for reconsideration was filed by the Appellant in that case on January 11, 2016, which remains pending before the Ohio Supreme Court.

in assuming a role in his child's future, assuming he complied with the statute.   *See In re H.N.R.*, 2d Dist. Greene No. 2014-CA-35, 2014-Ohio-4959, ¶ 26, *affirmed on appeal*, Slip Opinion No. 2015-Ohio-5476 (Dec. 31, 2015), citing *Lehr* and *In re Cameron*, 153 Ohio App.3d 687, 2003-Ohio-4304, 795 N.E.2d 707, ¶ 20 (1st Dist.).   Courts have commented that the rights of a putative father must be balanced with protection of the best interests of children, including the provision of a permanent and stable home and the completion of the adoption process in an expeditious manner.   *See, e.g., In re Adoption of G.V.*, 126 Ohio St.3d 249, 2010-Ohio-3349, 933 N.E.2d 245, ¶ 39 (Cupp, J., dissenting); *In re Adoption of A.N.,* 2013-Ohio-3871, 997 N.E.2d 1244, ¶ 26 (3d Dist.).

**{¶ 22}**   While Appellant's case was pending in this court, the supreme court issued another decision addressing Ohio's putative father registry, *In re Adoption of H.N.R*, *supra*, an appeal from this district.   The putative father argued that R.C. 3107.07(B), imposing a 30-day time period to register as the putative father, was unconstitutional as applied to fathers of children surrendered for adoption after the deadline passed.   In that case, the putative father's paternity had been established by DNA testing, but he had neither registered nor attempted to register as the putative father, and he had not initiated any legal proceedings to establish his paternity before the petition for adoption was filed (more than five months after the child was born).

**{¶ 23}**   The Supreme Court noted that the putative father in *H.N.R.* did not raise "a broad-based, facial due process challenge to Ohio's adoption laws, but instead a discrete, as-applied due process challenge" to one of its specific provisions.   *Id.* at ¶ 21. The court observed that, for it to consider such a challenge, there must be an actual, rather than a hypothetical, violation of the putative father's constitutional rights.   *Id.* at ¶

32. The Appellant in *H.N.R.* did not allege that he was aware of the putative father registry prior to the adoption petition and that he would have registered but for the futility of trying to do so; he also did not allege that he made any attempt to establish legal paternity prior to the filing of the adoption petition. *H.N.R.* at ¶ 36. The supreme court held it could not say that the appellant was prejudiced by the fact that his opportunity to register in the Ohio Putative Father Registry did not extend up to the date that the adoption petition was filed. Therefore, any argument that he was injured was "merely hypothetical." *Id.* The supreme court declined "to provide an advisory opinion on the constitutionality of R.C. 3107.07(B)(1) and/or R.C. 3107.062 * * *." *Id.*

{¶ 24} As described above, Appellant attempted to register as a putative father on April 1, 2015; his registration was rejected because of the 30-day limitation in the statute. The petition for adoption was filed on April 14, 2015. Thus, pursuant to the reasoning in *H.N.R.*, **if** R.C. 3107.07(B)(1) were found to be unconstitutional, it would be unconstitutional as applied to Appellant, but not as applied to the putative father in *H.N.R.* Neither putative father registered within 30 days of the child's birth, but Appellant differs from the putative father in *H.N.R.* in that Appellant did attempt to register before the petition for adoption was filed.

{¶ 25} Like the supreme court in *H.N.R.*, we cannot address any constitutional argument regarding the applicability of the time limitations related to registering as a putative father at this time.

{¶ 26} First, the motion Appellant filed in the trial court (which is the basis of the judgment we are reviewing) did not in any way challenge the constitutionality of R.C. 3107.07(B)(1) generally or as applied to him; it sought only to establish parental rights

through "paternity/genetic testing." Appellant also did not raise this issue in his appellate brief, with which he submitted for the first time unverified documents from which his efforts to get registered as a putative father or to intervene in the adoption can be deduced. The argument in Appellant's brief is, much more generally, that it was unfair for the trial court to conclude that his consent was unnecessary and not to give him notice of the adoption proceedings when he had tried (but not succeeded) in registering as a putative father and in initiating court or administrative proceedings to establish his parentage.

{¶ 27} In *H.N.R.*, the supreme court recognized that the Appellant's position (where he had established paternity through a DNA test but had taken no other legal action to establish paternity) "is not an unsympathetic one." *Id.* at ¶ 37. Likewise, we recognize that Appellant is a layperson who has represented himself in all of his efforts to intervene in Z.G.A.'s adoption, and that navigating the various means of establishing the parent-child relationship for purposes of obtaining notice of Ohio adoption proceedings may be challenging to lawyers and laypersons alike. However, we cannot accept Appellant's suggestion in his brief that the trial court should have equated his misdirected and incomplete efforts to establish a parent-child relationship with Z.G.A. or to intervene in her adoption as having established his parent-child relationship in a court or administrative proceeding "prior to the filing of the petition" for purposes of requiring his consent, pursuant to R.C. 3107.06(B)(3).

{¶ 28} Issues raised for the first time on appeal are not properly before this court and generally will not be addressed. *State v. Lehman*, 2d Dist. Champaign No. 2014-CA-17, 2015-Ohio-1979, ¶ 14, citing *State v. Schneider,* 2d Dist. Greene No. 95-CA-18, 1995 WL 737910, *1 (Dec. 13, 1995). The Supreme Court of Ohio has held that "[f]ailure to

raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Thompson,* 2d Dist. Montgomery No. 20359, 2004-Ohio-5802, quoting *State v. Awan,* 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. An appellate court may consider a constitutional challenge that has been waived in some situations, *State v. Brewer*, 2d Dist. Montgomery No. 26153, 2015-Ohio-693, ¶ 36, but it is not required to do so.

{¶ 29} Finally, we note that the documents from which we have compiled the history of Appellant's filings and mailings in the months preceding the filing of his "Request for Paternity/Genetic Testing" in the Greene County court, and which would be necessary to establish the timeline for a constitutional challenge to R.C. 3107.07(B)(1), were never before the trial court; they were attached to Appellant's appellate brief. A party cannot introduce new evidence on appeal, and it is not the role of an appellate court to consider an issue in the first instance. *State v. Alford,* 2d Dist. Montgomery No. 25715, 2013-Ohio-5045, ¶ 11.

{¶ 30} We review a trial court's judgment by reviewing the evidence on which the trial court based its decision. Appellant did not raise any argument as to the constitutionality of R.C. 3107.07(B), as applied to him, and the documents on which such an argument might have been made were not filed in the trial court and even now are not properly authenticated. The U.S. and Ohio Supreme Courts have long held that a putative father registry is constitutional, and there was nothing before the trial court other than the fact that Appellant had not registered within the statutory timeframe.

**{¶ 31}** The assignments of error are overruled.

**{¶ 32}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

J.M.
Michael R. Voorhees
Hon. Thomas M. O'Diam